COBLER, ADMINISTRATOR *v.* PRUDENTIAL LIFE INSURANCE COMPANY ET AL.

[No. 16,406.   Filed February 13, 1941.]

642

*W. W. Sharpless,* of Garrett; *McAdams & Lincoln,* of Fort Wayne; and *Wood & Wood,* of Angola, for appellant.

*Samuel D. Jackson* and *Eggeman, Reed & Cleland,* all of Fort Wayne, for appellees.

BLESSING, J.—On August 30, 1936, Orange W. Barrett and his wife, Maude Barrett, riding in an automobile which Mr. Barrett was driving, were involved in a head-on collision with another car. Both of the Barretts suffered fatal injuries and died in a common disaster. At the time of the collision Mr. Barrett was carrying a life insurance policy in The Prudential Life Insurance Company of America in which his wife, Maude Barrett, was the named beneficiary.

One of the clauses in the policy provided: "if there be no beneficiary, original or substituted, when the policy becomes a claim by death, the company will pay the commuted value of the instalments payable, to the executors, administrators or assigns of the insured." On March 8, 1937, the appellant filed his complaint against The Prudential Life Insurance Company and appropriate pleadings were thereafter filed bringing appellee Glenn C. Henderson, Administrator of the estate of Orange W. Barrett, deceased, into the cause.

The court found the amount due upon the insurance policy and upon such finding the insurance company paid to the clerk of the Allen Circuit Court the proceeds of said policy for the benefit of the party entitled thereto.

Subsequent to the determination of the amount due upon the policy, the right to the proceeds thereof became the subject of contest between the appellant as administrator of the estate of Maude Barrett, deceased, who claimed that his decedent survived her husband, and Glenn C. Henderson, administrator of the estate of Orange W. Barrett, deceased. The court heard the evidence, found for the appellee, Glenn C. Henderson,

administrator of the estate of Orange W. Barrett, deceased, and entered judgment awarding the proceeds in the hands of the clerk of the Allen Circuit Court to said appellee.

The appellant filed his motion for a new trial which was overruled and this constitutes the only assignment of error upon this appeal. For causes for a new trial numerous assignments were set out but all proper assignments have been expressly waived except:

1. The decision of the court is contrary to law;

15. Newly discovered evidence.

The finding of the court is supported by the ■ evidence and therefore the first cause for a new trial need be given no consideration.

This leaves the ruling of the trial court on the question of newly discovered evidence the only question to be disposed of in this appeal.

It is conceded that The Prudential Life Insurance Company of America, upon the payment of the proceeds found due under its policy to the clerk of the Allen Circuit Court, has no further liability and has no interest in this appeal. When reference is made hereinafter to the appellant or appellee it will be understood that such reference relates only to the respective administrators of said estates.

It is further conceded by the contesting parties, under the recent decision of *McKinney* v. *Depoy* (1938), 213 Ind. 361, 12 N. E. (2d) 250, that appellant ■ had the burden of proof that his decedent survived the appellee's decedent.

In order to discharge this burden the appellant produced four witnesses, including the coroner, a physician, two lay witnesses, and another doctor. The two lay witnesses appeared upon the scene something like three-quarters of an hour after the accident, and testi-

fied that they observed the Barretts, who still remained in the car following the accident, and when the door was opened the arm of Mrs. Barrett slumped down and her head tilted downward and toward Mr. Barrett. These same parties gave some evidence as to blood coming from the wounds upon Mrs. Barrett. From the slumping of the body and the bleeding these parties thought she was alive when they first arrived. The physician testified that dead persons do not bleed because there is no pressure exerted from the pulsations of the heart. This same physician did admit that a dead person will leak blood from wounds but only for a very few minutes. The coroner first saw the Barretts about an hour and a half after the accident and upon examination of them, which consisted of feeling the pulse, noticing whether either was breathing, examining the eyes as to the dilation of the pupils and noting their appearance, ordered the bodies sent to the mortuary. He thought they had been dead for almost two hours. At eight o'clock that evening he examined Mrs. Barrett's body and basing his opinion on blood from the nose, ears and mouth found that she had suffered a fracture at the base of the skull. The coroner admitted that the manual examination that he made did not disclose a fracture of the skull, but explained that a fracture of the skull at such point is not always disclosed from manual examination. His opinion as to a fracture of the skull was also based on the finding that her other injuries were not of such character to cause death. The coroner returned two verdicts finding that each of the Barretts came to his and her death by automobile collision with contributing cause of a fractured skull. The lay witnesses produced by appellant contradicted the coroner with respect to there being any loss of blood from the nose, ears or mouth of Mrs.

Barrett. In his first deposition the coroner had no opinion as to survivorship, but in the second deposition it was his opinion that Mrs. Barrett died instantly.

To meet this evidence the appellee produced six lay witnesses and three physicians.

The first lay witness produced by the appellee gave evidence of the collision between the Oldsmobile, in which the Barretts were riding, and the Ford car occupied by several people. He describes the collision as being very violent. He testified that some of the people from the Ford car were thrown as far as fifty to one hundred feet. The Barretts remained in the car and the motor of this car was pushed back through the floor boards and the Barrett bodies were in a distorted and cramped position in the single compartment. This witness drove on to a nearby telephone, called the ambulance, and returned to the scene of the accident. Upon an examination of the Barretts he pronounced them both dead. All of appellee's other lay witnesses who reached the scene of the accident a short time from its happening testified that both the Barretts were dead. These lay witnesses appear to have reached the scene prior to the time of the arrival of the witnesses produced by appellant.

It appears from the evidence that of the six or seven passengers in the Ford car, one at least was killed and the others injured, and upon the arrival of one Haverstock, the undertaker and ambulance driver, one lay witness who assisted him in checking the bodies to determine who were dead and who were injured saw Haverstock take hold of Mrs. Barrett's wrist and then of Mr. Barrett's wrist, after which he pronounced both of them dead.

To meet the medical testimony produced by appellant, the appellee called three physicians, each of whom

after having propounded to him a hypothetical question, testified in effect that the Barretts died almost at the time of the accident and simultaneously. One of such physicians went so far as to say, when the injuries were described to him, that Mrs. Barrett would have been the first one to die. In addition to this evidence, two of said physicians testified concerning the flow of blood from bodies of dead persons; one of them saying that it might flow for many minutes after death and the other saying that blood might flow as long as forty-five minutes.

Appellant filed with his motion for a new trial appellant's own affidavit and the affidavit of DeWayne Squier, the last affidavit setting out the evidence that he and his brother would give if a new trial were granted.

One who seeks a new trial on the ground of newly discovered evidence must first show his diligence by setting out the facts that constitute the same so that the court, in passing thereon, may determine from the facts set out whether such diligence is really shown. The law looks with disfavor upon applications for a new trial on the ground of newly discovered evidence, and requires a strict compliance with the rule of düe diligence to secure a new trial on such ground. It is unnecessary to quote from the language of the decisions of our courts on this point but the following authorities sustain such assertion: *Hines* v. *Driver* (1885), 100 Ind. 315; *Morrison* v. *Carey* (1891), 129 Ind. 277, 28 N. E. 697.

The presumption is that the parties might have discovered the evidence in time to use it at the trial. *Schick* v. *Blakesley* (1923), 80 Ind. App. 253, 134 N. E. 498; *Morrison v. Carey, supra.*

The affidavit of the appellant upon which he claims the right of the benefit of newly discovered evidence

contains the following as the only allegations of diligence: "Affiant says that before the trial of said cause he made inquiry and search for evidence to support and sustain the allegations of his complaint in said cause; that he interviewed individuals that were present at the time of the wreck and interviewed every person that he knew was at the collision at the time it occurred."

Upon the examinaton of this portion of the appellant's affidavit we are of the opinion that due diligence is not shown. The affidavit states that appellant ■ interviewed every person that he knew was at the collision at the time it occurred but makes no showing that he made any inquiry of those present to learn who else was present or their identity. Upon examination of the affidavit of one of the new witnesses the fact is set out that he and his brother were told by the one who seemed to be in charge not to move the Barrett bodies until the coroner came. Had proper inquiry been made by appellant of the persons present at the accident and interviewed by him, a sufficient identity of the two new witnesses might have been obtained and their testimony secured. It appears to us that due diligence required such inquiry and if so, the time, place, and the circumstances must be stated, so that the court may have knowledge that such diligence was used as is required by law. *McDonald* v. *Coryell* (1893), 134 Ind. 493, 34 N. E. 7.

The affidavit as to due diligence in the case of *Payne* v. *Larter* (1907), 40 Ind. App. 425, 82 N. E. 96, was held insufficient and we find appellant's affidavit in the instant case to be no stronger than in the Larter case, *supra*.

The affidavit of appellant is also open to criticism because it does not specify in certain terms that the

advice which he received following the trial was the first knowledge he had about the witnesses on whom he is depending for the new evidence. If he knew of these potential witnesses before, or at the time of trial, his negligence in making no effort to secure their testimony is fatal to his application. *Simpson* v. *Wilson, Administrator* (1855), 6 Ind. 474.

Another essential requisite before a new trial can be granted on the ground of newly discovered evidence is that the new evidence must not be cumulative.

The two witnesses according to the affidavit filed by one of them will both testify that they reached the scene of the accident, following closely the approach of the ambulance. Upon view of the Barrett bodies they state that the woman was sitting to the right of her husband with her head lying just back of the top of the shoulder of the man; that while they were looking into the car the woman raised her head in a more vertical position and the flesh of her body trembled and moved. A second view during the space of an hour while they were there revealed a still more erect position of her head.

These new witnesses, according to the affidavit, corroborate the two lay witnesses whom appellant produced at the trial as to the general position of Mrs. Barrett's body in the car, and contradict the witnesses for appellee present at the scene, who all testified that Mrs. Barrett, when seen by them, was leaning toward her husband with her head upon the seat cushion. Some of these same witnesses testified that they saw Mrs. Barrett after the first ambulance had returned from LaPorte and her position had not changed. Appellee's witnesses who were at the scene all arrived prior to the arrival of the witnesses who testified for the appel-

lant and the witnesses whose evidence is now sought.

The testimony of the new witnesses would be cumulative on the position of Mrs. Barrett's body in the car, and also cumulative on the fact that she moved, except in point of time.

This difference in point of time could have lost its signifiance to the trial court when he was considering the examination of the Barrett bodies made by the undertaker and whose arrival preceded that of these proposed witnesses and appellant's two lay witnesses who did testify. If this be true then we cannot say that the new evidence is not cumulative.

If, however, we were to conclude that the new evidence should not be considered as cumulative, two obstacles, in addition to lack of due diligence, remain in the path of the appellant for a reversal of this cause, first, that a motion for a new trial on the ground of newly discovered evidence calls for the exercise of judicial discretion. The rule on this point is that the discretion lodged in the trial court will not be disturbed unless it is shown that there was manifest abuse of such discretion. *Lowry* v. *Indianapolis Traction, etc., Co.* (1921), 77 Ind. App. 138, 126 N. E. 223. We find no ground for interference with the discretion of the trial court in this cause.

Secondly, that the new evidence set out in the affidavit of DeWayne Squier must be of such a character as to make it obvious that upon a second trial of the issue involved a different result will be reached. *Hauser* v. *George* (1935), 100 Ind. App. 346, 195 N. E. 592. We find no reasonable ground for belief that another trial will result in a different decision.

The court committed no error in overruling appellant's motion for a new trial. Judgment affirmed.

NOTE.—Reported in 31 N. E. (2d) 678.