VIERK ET AL. *v.* RITENOUR ET AL.

[No. 19,312. Filed March 8, 1961.]

*Warren B. Thompson* and *Mark L. Thompson,* of Lafayette, for appellants.

*Stanton Babcock* and *Stuart, Branigin, Ricks & Schilling,* of counsel, both of Lafayette, for appellees.

COOPER, J.—This appeal is from an action brought by the appellees herein to enjoin the appellants from erecting a building in violation of a certain restrictive covenant incorporated in the deed to the site of the proposed building.

The issues were formed by the complaint in three paragraphs and the appellants' answers thereto. Cause was submitted to the court for trial and the court found for the appellees on paragraph one of their complaint. Paragraph two of complaint was dismissed and the court found against the appellees on the third paragraph of complaint. The pertinent part of the court's judgment on paragraph one reads, as follows:

". . . the Court being duly and sufficiently advised in the premises, now finds for the plaintiffs that the allegations of Paragraph One of plaintiff's complaint are true; that the restriction and condition contained in the plat of Richard Ritenour's Sub-Division to the City of West Lafayette, as more particularly set forth in rhetorical paragraph four of paragraph one of plaintiffs' complaint, is a valid existing restrictive covenant; that the defendants have caused a building to be erected upon Lots numbered 10, 11, 12, 13 and 14 of Richard Ritenour's Sub-Division to the City of West Lafayette, Indiana, in violation of the restriction contained in the plat of said Sub-Division as set forth in rhetorical paragraph four of paragraph one of plaintiffs' complaint; that defendants should be enjoined from erecting any building in the Richard Ritenour's Sub-Division to the City of West Lafayette, Indiana, unless and until said defendants shall abide by the provisions of the restriction contained in the plat of the Richard Ritenour's Sub-Division to the City of West Lafayette, Indiana, as set forth in rhetorical paragraph four of paragraph one of plaintiffs' complaint and that the defendant, Norman Vierk, should be compelled to

alter, modify, or remodel any and all existing building on lots numbered 10, 11, 12, 13 and 14 owned by him in said Sub-Division to comply with said restrictive covenant, or to remove said building from said lots.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendants be and they are hereby perpetually enjoined from erecting any building in Richard Ritenour's Sub-Division to the City of West Lafayette unless and until the design, location, and cost thereof shall have been approved in writing by a committee elected by a majority of the owners of lots in said Sub-Division, or unless and until said committee, or its successor, has failed to either approve or dis-approve the design, location and cost thereof for thirty days after submission of such information to it.

"AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the defendant, Norman Vierk, be and he is hereby ordered to alter, modify or remodel any and all existing building on Lots numbered 10, 11, 12, 13 and 14, owned by him in the Richard Ritenour Sub-Division to West Lafayette, Indiana, to comply with the requirements of the following covenant:

" 'No building shall be erected in this Sub-Division until the design, location and cost thereof shall have been approved in writing by a committee elected by a majority of the owners of lots in said Sub-Division; however, in the event that said committee fails to approve or disapprove such design, location and cost within 30 days after submission to it, then such applicant may build without such approval,' or to remove said building from said lots. . . ."

Thereafter, within the time allowed, the appellants filed their motion for a new trial, the material part reading as follows:

"1. That the decision of the Court was not sustained by sufficient evidence.

"2.   That the decision of the Court is contrary to law.

"3.   Error of law occurring at the trial in this: That the Court was influenced in arriving at its decision by the testimony of the witness Maurice R. Winfield as to the damage to the valuation of the plaintiffs' property, in support of paragraph two of the plaintiffs' complaint, which, said paragraph was later dismissed and which said testimony was not admissible in support of either of the other paragraphs of said complaint.

"4.   Error of law occurring at the trial in this: That the Court was influenced in arriving at its decision by the testimony of the witness Charles W. Shook as to the damage to the valuation of the plaintiffs' property in support of paragraph two of the plaintiffs' complaint which said paragraph was later dismissed and which said testimony was not admissible in support of either of the other paragraphs of complaint."

The aforesaid motion was overruled. The error assigned before us is the overruling of the motion for new trial.

At the outset we note that the appellants have waived specifications numbered 1, 3 and 4 of said motion for new trial by failing to discuss each of those propositions in the Argument portion of their brief. See §2677, Flanagan, Wiltrout and Hamilton's, Indiana Trial and Appellate Practice, Comment No. 1 (1959 Supp.), and authorities therein cited.

The sole question before us is this: Is the decision of the court contrary to law? The appellants' main contention upon this proposition, as stated in their brief, is "this restriction, viewed in the light of the facts and circumstances in this case, is too vague and uncertain to be upheld."

The record reveals that the following Stipulation of Facts was entered into the evidence in this cause:

"It is agreed and stipulated by the parties hereto that the following statements are true and that they and the attached exhibits shall, for purposes of determining the issues raised by legal paragraphs one and three of plaintiffs' complaint and the answers thereto, be considered by the court as true:

"1. Richard Ritenour's Subdivision to the City of West Lafayette, Indiana, was duly platted and entered of record in the office of the Recorder of Tippecanoe County, in Plat Book 5, Page 21-A on November 13, 1951 and re-recorded in Plat Book 3, Page 32-A on September 17, 1952. A copy of said plat, as recorded on November 13, 1951, is attached hereto as Exhibit A.

"2. The only change made in the re-recorded plat was to reduce the minimun first floor area stated in 3 (B) from 1200 to 1000 square feet.

"3. That plaintiffs are now, and were at the time this suit was filed, the owners collectively of lots 1, 3, 4, 5, 6, 7, 8, 9, 15, 16, 18, 19, 20, and 21 and the defendant, Norman A. Vierk, the owner of lots 10, 11, 12, 13, and 14 in said subdivision.

"4. That the defendant, Norman S. Vierk, acquired title to said lots 10, 11, 12, 13 and 14 from Richard Ritenour, developer of Richard Ritenour's Subdivision, between the dates November 21, 1955 and August 28, 1956; that all of the deeds to him and to the plaintiffs contained the following provision:

" 'Subject to building and occupancy restrictions and public utility easements provided in the recorded plat of said subdivision as appears in Plat Book 5, page 21-A.'

"that the defendant, Norman A. Vierk, and his wife conveyed lot 14 in said subdivision to Fred L. Clark and Ina L. Clark, husband and wife, on September 28, 1956, and that said deed contained the provision quoted immediately above; that said lot 14 was reconveyed to the defendant, Norman A. Vierk, on May 9, 1958.

"5. That at the time this suit was filed there were residences constructed on lots 1, 8, 15, 16, 17, 18, 19, 20, and 21, and that all such residences were

occupied; that they were all single-family dwellings; that all other lots in the subdivision were unimproved.

"6. That Richard Ritenour's Subdivision is located in a residential area and that there are no businesses located on any adjoining tracts; that there are no multiple family dwellings located in said subdivision other than that being constructed by the defendants, nor are there any such dwellings located in adjoinng subdivisions.

"7. That no committee was ever elected by the owners of lots in Richard Ritenour's Subdivision, or by any of them, prior to May 5, 1958, and that the residences located, in said subdivision on that date were constructed without design, location, or cost thereof being first approved by any committee representing the owners of lots in the subdivision, or any papers or plans disclosing the design, location, or cost being first submitted to such a committee.

"8. That on May 3, 1958 at approximately 1:00 o'clock P.M., a building permit was issued by the City of West Lafayette, Indiana, to the defendant, Norman A. Vierk, for the construction of a building on the lots owned by him in Richard Ritenour's Subdivision in accordance with the plans attached hereto, made a part hereof, and marked Exhibit B1, B2, B3, B4, and B5.

"9. That no work was done at the building site in preparation for the construction of said building until May 5, 1958, and that none of the plaintiffs had any knowledge until said date of the defendants' intention to erect said building, or any other structure, on the lots in Richard Ritenour's Subdivision owned by the defendant, Norman A. Vierk.

"10. That approximately 7:30 o'clock P.M., on May 5, 1958, at a meeting attended by a majority of the owners of lots in Richard Ritenour's Subdivision, who were also the owners of a majority of the lots therein, a committee of three property owners in said subdivision, namely, Richard Ritenour, Corydon H. Hall, and Leo V. Kline, was duly elected by unanimous vote for the purpose of exer-

cising the authority vested in the committee referred to in the plat of the subdivision.

"11. That at approximately 8:30 o'clock P.M., on May 5, 1958, the defendant, Norman A. Vierk, was orally informed of the existence of the committee described in the preceding paragraph; that on May 7, 1958 the defendant, Norman A. Vierk, received the written notice attached hereto, made a part hereof, and marked Exhibit C.

"12. That neither of the defendants has ever submitted any plans, drawings, or other papers disclosing the design, location, or cost of the building being constructed by them, or any other matter pertaining to said building, to the committee referred to above or to any of the plaintiffs; that the defendant, Norman A. Vierk, has no intention of ever submitting any such plans, drawings, or other papers to said committee, and that prior to May 23, 1958, he stated that he would proceed with construction of the building whether the committee approved its design, location and cost or not, unless otherwise ordered by the Court.

"13. That on the 1st day of May, 1958, the defendants prepared a contract for the construction of the building being built by them in Richard Ritenour's Subdivision and that said contract was duly executed by the defendant, Norman A. Vierk, and the defendants, Gerald Rausch and Louis Rausch, d/b/a G. and L. Construction Company, on the 6th day of May, 1958.

"14. That the building in question is completely framed, the doors, and windows installed, and all water lines and sewers completed; that the defendant, Norman A. Vierk, has committed himself to purchase material and in his contract to the extent of $40,000.00."

Without detailing all the other evidence which would lengthen and burden this opinion, it is sufficient to say that the evidence and inferences which could be drawn from the foregoing stipulation of facts is sufficient to sustain the judgment of the trial court if the covenants involved are legal and not con-

trary to law, nor can we say that the covenant, heretofore set out in Paragraph No. 4 of appellees' complaint, is too vague and uncertain to be upheld. The phraseology to the covenant is stated in simple and concise language.

Generally speaking, a covenant is an agreement duly made to do, or not to do a particular act. It is a species of express contract. Covenants may be divided into two classes; covenants in deed, or express covenants; and covenants in law or implied covenants. See Sec. I, Covenants, C. J. S. Indiana follows this general rule; in the case of *Wischmeyer* v. *Finch* (1952), 231 Ind. 282, 288, 107 N. E. 2d 661, our Supreme Court stated:

"There are two methods of creating restrictions upon the use of property. One is by express covenants contained in the deed, and the other is by a recorded plat of the subdivision and a purchaser buys lots in the subdivision with reference to the plat. *Davis* v. *Huguenor* (1951), 408 Ill. 468, 97 N. E. 2d 295, 297, 23 A. L. R. 2d 931; *Loomis* v. *Collins* (1916), 272 Ill. 211, 111 N. E. 999, 1002.

"This court has held that when lands are conveyed according to an official plat of their survey, the plat with its notes becomes as much a part of the grant or deed by which they are conveyed, and controls the same as if they were inserted in the deed or grant. *Gary Land Co.* v. *Griesel* (1913), 179 Ind. 204, 100 N. E. 673. See also: *Menstell* v. *Johnson* (1927), 125 Or. 150, 262 Pac. 853, 266 Pac. 891, 57 A. L. R. 311.

"We affirm this rule.

"The lots here in question were conveyed according to the official plat of Briarwood Amended, and the restrictive agreement contained therein became a part of the deed by which said lots 6, 7, and 8 were conveyed to Peoples State Bank the same as

if they had been inserted in it. The sale of said lots to Peoples State Bank—the first purchaser— served as a dedication of the streets and of the utility strips, *and it could not accept the benfits of ths survey of the plat, and the street and utility strips, without accepting whatever burden the restrictions might impose."* (Our emphasis.)

The record reflects this subdivision plat was recorded and the purchaser of said lots could not accept the benefits it confers, without accepting whatever burden the restrictions might impose, also, "When lots or parts thereof are sold with reference to a recorded plat other rights intervene, and any restrictions contained in the plat become binding upon the purchasers." *Wischmeyer* v. *Finch,* at 289, *supra,* and further states:

"The rule establishing appellants' rights herein is ably stated in 7 Thompson on Real Property, 4th ed., §3606, p. 90, as follows:
" 'The right of one owner of a lot to enforce restrictions upon other lots rests upon the ground that the restrictions were for the benefit of all the lots subject to the same restrictions.' "

Having determined that the appellants herein are bound by the restrictions contained in the plat and deeds, we again follow what our Supreme Court stated in the Wischmeyer case, *supra,* to ascertain whether the appellees were entitled to enforce the provisions of such restrictions. At p. 290 in the Wischmeyer case, *supra,* the court stated:

"*Second:* Since we have determined that appellees are bound by the restrictions of the plat, we must now consider whether appellants are entitled to enforce the provisions of such restrictions.
"The rule here applicable is ably stated in *South-*

*west Petroleum Co.* v. *Logan* (1937), 180 Okl. 477, 71 P. 2d 759, 762:

" 'It has long been an established principle that an agreement restricting the use of land in a certain tract, imposed thereon by a ■ common grantor under a general improvement plan, intended for the mutual benefit of all grantees therein, may be enforced in equity by any subsequent grantee in such tract, who purchased with reliance on the general plan, against any other subsequent grantee taking with notice of the restrictions. (Citing authorities.) In section 3407, (§3614, 4th ed.) Thompson on Real Property, it is stated: 'One who takes land with notice of a restrictive agreement affecting it can not equitably refuse to perform it, though the agreement may not be a covenant which runs with the land, or creates a technical qualification of the estate conveyed.'

" 'The restrictions need not rise to the dignity of a grant or reservation, but create an equitable right in the nature of an ease- ■ ment, enforceable in equity against all persons taking with notice, even if it rests on no broader principle than that equity will enforce a proper contract concerning land, against all persons taking with notice of it. *Codman* v. *Bradley,* 201 Mass. 361, 87 N. E. 591, 593.'

"See also: *Menstell* v. *Johnson* (1927), 125 Or. 150, 262 Pac. 853, 266 Pac. 891, 57 A. L. R. 311, *supra*."

.   .   .

"The granting or refusing of relief in the violation of a building restriction is a matter ■ within the discretion of the trial court and is to be governed by equitable principles."

From the evidence in the record before us, we cannot say, as a matter of law, that the trial court abused his discretion in granting equitable relief in this cause.

Finding no error, the judgment of the trial court is affirmed.

Ax, C. J., Myers and Ryan, JJ., concur.

NOTE.—Reported in 172 N. E. 2d 679.