BAPTIST CHURCH IN NEW PROVIDENCE ET AL.
*v.* STALKER ET AL.

[No. 19,469. Filed March 8, 1961. Rehearing denied April 14, 1961. Transfer denied June 7, 1961.]

38

Cooper, Cooper, Cooper & Cox, of Madison, Orbison, Rudy & O'Connor, of New Albany, and Owen Voigt, of Jeffersonville, for appellants.

Metford & Hensley, of Madison, Homer D. Smith, of Jeffersonville, Inezellen Bales, Robert H. Orbison and Baker & Orbison, of counsel, all of Indianapolis, for appellees.

PFAFF, P. J.—Appellees James B. Stalker, Jr., Frances C. Stalker, and Dorothy Adams, as the only heirs of John M. Stalker, deceased, brought this action in the Clark Circuit Court to resist the probate of the Purported Last Will and Testament of said decedent. By proper affidavit this cause was venued to the Jefferson Circuit Court.

The issues were formed by the appellees' complaint as amended by interlineation and the appellants' answer thereto in admission and denial, in compliance with Rule 1-3 of the Supreme Court. The complaint as amended alleged the appellees were the heirs at law of the decedent, and the last will and testament of the decedent was invalid and void for the following reasons:

1. Undue execution in that the witnesses thereto did not sign said instrument in the presence of each other.

2. Failure of the witnesses to see the decedent sign the will, failure to see his signature on the will, and failure at any time to hear the decedent acknowledge his signature on the will.

3. Failure of a witness, who was a notary public, and who signed her name Audrey Wright, when her married name was Audrey Wright Gettelfinger, to see the testator sign the instrument, and to see the other two witnesses sign the instrument.

4. Execution under duress.

5. Fraud.

6. The corpus of the trust created under the terms of the will did not vest rendering the will in violation of the rule against perpetuities.

7. The trust created under the terms of the will violated the statute on accumulations and the rule against remoteness.

8. The trust created by the will did not comply with the statutory requisites.

It further averred that the will offered for probate on January 22, 1959, bore the date of February 22, 1951, and a contrary date of March 22, 1951.

The Pretended Last Will and Testament of the said John M. Stalker which was offered for probate and was duly impounded, is as follows:

"February 22, 1951

"I, John M. Stalker, Borden, Ind. leave all my property of every nature to the Baptist Church in New Providence (Borden) Ind.

"Provision 1—With this property or proceeds therefrom a trust fund shall be established with a responsible trust company—

"Provision 2—Only the net income shall be used and for the following purposes, to-wit:

"(a) The annual dues for the upkeep and care of the Stalker Lot in Walnut Ridge Cemetery shall be paid.

"(b) One-half of the remainder to hold services in the said church—

"(c) The remainder or what portion is necessary shall be used for upkeep and repair of the church building, or replacement if destroyed; fencing of the lot; additions if required—fuel, lighting and insurance—

"(d) Any portion of the income unused shall be added to the principal of the fund and remain a permanent part thereof—

"Provision 3—Any and all bona fide indebtedness against my estate shall be paid in full—

"Provision 4—Marvin Wright, Borden, Ind. and Rev. C. D. Strother, New Albany, Ind. shall be made co-trustees of fund—

Signed—John M. Stalker

Mrs. Audrey Wright Gettelfinger was given her furniture at the time of her marriage, and no furthur consideration shall be given that provision.
June 3, 1957.

"Witnesses
*Sylvia Porter*

Sylvia Porter
*Bernard Gettelfinger*

Bernard Gettelfinger

"STATE OF INDIANA
COUNTY OF CLARK:

Signed in my presence and in the presence of each other this 22nd day of March, 1951.

Signed:   Audrey Wright

Notary Public

(N. P. Seal)

My Commission expires Feb. 21, 1952."

Trial was held by a jury. At the conclusion of the appellees' evidence the appellants moved the court to direct the jury to return a verdict for them. At the same time appellees moved the court to direct the jury to return a verdict for them on the issues raised by their complaint on their allegations the will was invalid by reason of the fact it violated the rule against perpetuities, the statute on accumulations, and the rule against remoteness.

The court overruled the motion of the appellees to direct the jury to return a verdict for them and sustained the motion of the appellants to direct the jury to return a verdict for them.

Pursuant to the court's direction the jury returned a verdict for appellants. Appellees filed a motion for a *venire de novo* which was overruled. Judgment was entered on the verdict of the jury.

Appellees, pursuant to the provisions of the Acts of 1959, ch. 25, Sec. 1-6, (Sec. 2-3201, Burns' 1946 Replacement, Supp.) * filed their motion for a new trial averring as follows:

---

* ". . . (b) A ruling or order of the court granting motion for a new trial shall be deemed to be a final judgment, and an appeal may be taken therefrom."

1. The verdict of the jury is not sustained by sufficient evidence.

2. The verdict of the jury is contrary to law.

3. Error of law occurring at the trial in each of the following particulars:

(a) The Court erred in overruling plaintiffs' motion for *venire de novo*.

(b) The Court erred in sustaining defendants' motion for a directed verdict herein.

(c) The Court erred in giving peremptory instructions directing the jury to return a verdict in favor of the defendants and against the plaintiffs.

4. The plaintiffs have, since the trial, discovered evidence material to the action, as follows:

(a) Edwin C. Schroeder, an expert in the field of handwriting, questioned documents, inks, typewriting and related subjects, has examined the purported original last will and testament of John M. Stalker and will testify that after his examination and submitting said will to numerous scientific tests, he is of the opinion that the handwriting of the decedent, John M. Stalker, was written after the statement on said will:

> "Mrs. Audrey W. Gettelfinger was given her furniture at the time of her marriage and no further consideration shall be given that provision June 3 1957"

all of which more fully appears by the affidavits of Edwin C. Schroeder and attached Exhibit A, James B. Stalker, Jr., and Robert H. Orbison filed herewith and made a part of this motion for a new trial, which evidence was unknown to these plaintiffs and to their counsel at the time of the trial, and could not, with

reasonable diligence, have been discovered and produced at the time of the trial for the reasons that:

1. The purported original will of John M. Stalker was either in the hands of the attorneys for the defendants or was impounded by the Clerk of the Clark County Circuit Court from the date of the death of the said John M. Stalker to the date of the trial in the Jefferson Circuit Court.

2. The two witnesses, Bernard Gettelfinger and Sylvia Porter and the Notary Public, Audrey Gettelfinger, whose names appeared on said purported will changed their sworn statements which they had made January 16, 1959, and their unsworn statements which they had made on January 15, 1959, which statements conclusively proved the undue execution of the purported last will of John M. Stalker and at the time of the trial entirely repudiated such statements and their testimony at the trial in this court was directly opposite to their former statements, at which time it was too late for these plaintiffs or their counsel to obtain the evidence which was discovered after the trial of this cause.

3. By reason of the sworn statements made by Bernard Gettelfinger, Sylvia Porter and Audrey Gettelfinger on January 15 and 16, 1959, counsel for plaintiffs was convinced that he did not need any further evidence in order to sustain the allegations of the complaint in regard to the undue execution of the will and so advised plaintiffs.

In support of the motion for a new trial the appellees filed two affidavits of James B. Stalker, Jr., one of Robert H. Orbison, and one of Edwin C. Schroeder. The first affidavit averred that before the trial of this

cause he made diligent inquiry for evidence to sustain the allegations of the complaint; that on January 15, 1959, and January 16, 1959, he interviewed the three persons whose names appeared on the purported will as witnesses to ascertain their knowledge of the matters in controversy and they stated to him on both said dates the facts as they knew them. The affidavit then avers:

"That affiant did not know until the trial of this cause that it would be necessary to have said last will examined by a handwriting expert; that after the trial of this cause affiant had Edwin C. Schroeder of the Indiana State Police examine said will and affiant has now discovered that in the opinion of the said Edwin C. Schroeder the signature of John M. Stalker on said will was signed after the other signatures appearing thereon and after the statement

'Mrs. Audrey W. Gettelfinger was given her furniture at the time of her marriage and no further consideration shall be given that provision June 3 1957'

which testimony becomes most important in the light of the statements under oath of Audrey Gettelfinger and Sylvia Porter at the time of the trial that the above quoted portion of the will was not there when they signed the will March 22, 1951; that he could not, by reasonable diligence, have discovered that the said Edwin C. Schroeder would testify to said facts before the trial of this cause and he cannot prove said facts by any other witness, and he believes said facts to be true as set out in the affidavit of the said Edwin C. Schroeder which is also attached to this motion for a new trial."

The pertinent averments of the affidavit of Robert H. Orbison, one of the attorneys for appellees, are as follows:

"He has discovered new evidence which he could not, with reasonable diligence, have discovered and

produced at the trial of this cause in said Court for the reason that the newly discovered evidence involves the testimony of Edwin C. Schroeder who is an expert in handwriting and related subjects and said testimony could not be obtained without the examination of the original purported last will and testament was of John M. Stalker and said original purported last will and testament either in the hands of the attorneys for the defendants or was impounded by the Clerk of the Clark County Circuit Court prior to the trial of this cause. That Exhibit A attached to the affidavit is a part of said new evidence.

"Affiant had the sworn statements of the two witnesses and Notary Public who appeared on the said original purported last will and testament of the deceased, John M. Stalker, and such statements, if true, would have made the necessity of getting a handwriting expert on the case unnecessary and a needless expense to this affiant's clients so that even in the event affiant could have obtained said original purported last will and testament for examination and inspection by the said Edwin C. Schroeder, it was neither an oversight nor negligence on the part of this affiant as there was no reason for affiant to think that statements of these witnesses would be entirely changed upon the trial of said cause and it was not until after such trial that this affiant was able to obtain the information upon which the motion for a new trial is being presented.

"The exhibit to which reference is made consists of an enlarged photograph of the will of the testator, and a large photograph showing two lines crossing each other."

The second affidavit of James B. Stalker, Jr., after averring that on the trial of said cause, he was surprised at the testimony of his three witnesses (hereinafter named) and that the surprise was such that ordinary prudence could not have guarded against because he had rigidly interrogated said witnesses who

informed him that their testimony would be substantially as follows:

"Bernard Gettelfinger had stated that in 1951 when he had signed the purported will of John M. Stalker that he did not know what he was signing, that the paper which he signed was folded, that he did not see the signature of the testator, John M. Stalker, nor did the said John M. Stalker acknowledge his signature to him at any time, that he did not see any one else sign the paper nor any other signatures on the paper at all.

"Sylvia Porter stated in substance that she had signed the purported will of John M. Stalker in the hallway of this office while he was in bed, that she did not see any one else sign it, that the paper which she signed was folded two or three times that she did not see any signatures of any sort on the paper, that she did not remember who had signed it first and did not remember Bernard Gettelfinger signing it at all. She further stated that she did not remember John M. Stalker signing the paper nor did she see his signature nor any other signature thereon, that the testator, John M. Stalker, never stated to her that he wanted her to witness his signature nor did he acknowledge his signature to her at any time nor did she remember in what order the signatures were placed on the will.

"Audrey Gettelfinger stated that she could not swear that she saw John M. Stalker sign the purported will, that she did not know her husband, Bernard Gettelfinger, had signed the purported will until it was shown to her by Mr. James B. Stalker, Jr., in Borden, Indiana, on Tuesday, January 13, 1959, in Dr. John M. Stalker's dining room, that she could not remember in what order any one had signed it, that she did not see John M. Stalker sign nor did he acknowledge his signature to her on said purported will at any time."

That the testimony of said witnesses was directly the contrary thereof, and was in substance as follows:

"Bernard Gettelfinger stated at the time of the trial when called as a witness by the plaintiffs, that he saw John M. Stalker sign the will, he saw Sylvia Porter sign the will, and he saw his wife, Audrey Gettelfinger, notarize the signatures. That the paper which he signed was not folded but was flat on the kitchen table and that he remembered seeing writing thereon. He further stated that he signed the purported will first and handed the pen to Sylvia Porter and she then signed it or as he stated 'he saw her do something on the table', that he knew his wife, Audrey Gettelfinger, had signed as a notary as he had seen her sign it that night (March 22, 1951).

"Sylvia Porter testified at the time of the trial that she remembered seeing Dr. John M. Stalker sign the purported will on the night of March 22, 1951, that she saw Bernard Gettelfinger sign it first, that she signed it second, that Dr. Stalker signed it third and that Audrey Wright Gettelfinger then signed it as a witness and notary, that said will was signed in the kitchen at the kitchen table and everyone signed in the presence of the testator, John M. Stalker, and in the presence of each other.

"Audrey Gettelfinger testified at the time of the trial that she remembered seeing John M. Stalker sign the purported will, that it was signed by Bernard Gettelfinger, her husband, first, then by Sylvia Porter and that she then notarized all signatures and that everyone had signed in her presence and in the presence of each other."

The affidavit of Edwin C. Schroeder, an officer of the Indiana State Police, after stating his qualifications as a handwriting expert, is substantially as follows:

"He has examined the original purported will of John M. Stalker, deceased, which will is the subject of a suit in the Jefferson Circuit Court being numbered 15,185 and entitled James B. Stalker, Jr. et al v. Baptist Church in New Providence (Borden) Indiana et al.

"After such examination which included making numerous tests of said document and the handwrit-

ing and ink thereon, affiant is of the opinion that the signature 'John M. Stalker' was written after writing which states 'Mrs. Audrey W. Gettelfinger was given her furniture at the time of her marriage and no further consideration shall be given that provision June 3, 1957'.

"Affiant is prepared and willing to testify as to these facts and is prepared to prove by photographs, analysis of the handwriting on said will and other scientific means at his disposal that he is correct in his opinion."

On August 1, 1959, and within the time permitted by Rule 1-15 of the Supreme Court, the appellants filed six counter-affidavits. They were those of Audrey Wright Gettelfinger, Bernard Gettelfinger, Sylvia Porter, Julius Poff, Jacob G. Rudy and Owen Voight.

Audrey Wright Gettelfinger averred in substance that on June 16, 1959, six days before the trial of this cause, James B. Stalker, Jr., Robert H. Orbison and Inezellen Bales, two of appellees' attorneys, called at her house to discuss her testimony at the trial. She then states:

"On said date at said time at her home on said occasion this affiant informed the said James B. Stalker, Jr., the said Robert H. Orbison, and the said Inezellen Bales that the statements she had made to James B. Stalker, Jr. on the 15th day of January, 1959, and to all three of them on the 16th day of January, 1959, were incorrect; that she was taken by surprise when she made said statements on said dates in that she had not had time to give the matter thought or to recollect the facts concerning the execution of the last will and testament of John M. Stalker, deceased, which was approximately eight years prior thereto; and that she realized the statements were incorrect and that she was in error after she had ample opportunity to examine the original last will and testament of John M. Stalker, deceased, and to reflect and recall the occurrence when the last will and testament

of John M. Stalker, deceased, was executed in her presence on the 22nd day of March, 1951, by the said John M. Stalker, deceased, with his signature witnessed by her husband, Bernard Gettelfinger, Sylvia Porter, and this affiant."

The affidavit of Bernard Gettelfinger, after averring the same facts as to the visit of June 16, 1959, states:

"On said date at said time in his home on said occasion this affiant informed the said James B. Stalker, Jr., the said Robert H. Orbison, and the said Inezellen Bales that the statements he had made to James B. Stalker, Jr., on the 15th day of January, 1959, and to all three of them on the 16th day of January, 1959, were not entirely correct; that when he talked with James B. Stalker, Jr., on the 15th day of January, 1959, and to all three of them on the 16th day of January, 1959, he had not had time to recollect and recall the occurrence when the last will and testament of John M. Stalker, deceased, was executed; and that after he had an opportunity to examine and study the last will and testament of John M. Stalker, deceased, he realized that the statements he made to James B. Stalker, Jr. on January 15, 1959, and to all three of them on January 16, 1959, were not entirely correct and he so informed them.

"After the said James B. Stalker, Jr., the said Robert H. Orbison, and the said Inezellen Bales left his residence on the 16th day of January, 1959, they reduced to writing what purported to be the statement made to them by this affiant on January 16, 1959, but they did not give or show him a copy of said purported statement as written until the 16th day of June, 1959.

"On the 16th day of June, 1959, said James B. Stalker, Jr., said Robert H. Orbison, and said Inezellen Bales handed this affiant a written document, which they alleged to be a written typed copy of the facts that they alleged this affiant gave them on January 16, 1959.

"On the 16th day of June, 1959, at said time and on said occasion this affiant informed the said James B. Stalker, Jr., the said Robert H. Orbison,

and the said Inezellen Bales they had not accurately transcribed, written, and typed the facts and statements they alleged he gave them on January 16, 1959."

The affidavit of Sylvia Porter was substantially the same as that of Bernard Gettelfinger.

Julius Poff, Clerk of the Clark Circuit Court, averred in substance:

"The last will and testament of the decedent, John M. Stalker, was in his possession from the 22nd day of January, 1959, the date on which it was offered for probate and ordered impounded by the Clerk of the Clark Circuit Court, until the 22nd day of June, 1959, on which date he delivered it to the Honorable Paul R. Schnaitter, the Judge of the Jefferson Circuit Court, who was then presiding in the trial of the captioned cause of action.

"During the month of June, 1959, and prior to the 22nd day of June, 1959, on one occasion one or more of the plaintiffs and one of their attorneys together called at his offices and requested the right to examine said last will and testament. On said occasion they were permitted to inspect and examine said last will and testament of the decedent.

"At no time while the last will and testament of the decedent was in the possession of this affiant did any one of the plaintiffs, any one of their attorneys, or any one representing them request the right to have said last will and testament examined by a handwriting expert or any expert on the authenticity of questioned documents and questioned signatures."

Jacob G. Rudy, one of appellant's attorneys, states in his affidavit as follows:

"The last will and testament of the testator, John M. Stalker, deceased, was in his possession from the date of the death of the testator on January 10, 1959, until the 20th day of January, 1959, on which date it was delivered to Owen Voight, an attorney with law offices in the City of Jeffersonville, Indiana.

"During the period that said last will and testament of the testator was in the possession of said affiant, the plaintiff, James B. Stalker, Jr., examined it at the affiant's law offices in New Albany, Indiana, and examined it on the second occasion at the residence of the testator on the day the testator was buried."

Owen Voight states in his affidavit as follows:

"On the 20th day of January, 1959, the last will and testament of John M. Stalker, deceased, was delivered to him and remained in his possession until the 22nd day of January, 1959, on which date it was offered for probate and ordered impounded by the Clerk of the Clark Circuit Court.

"At no time did any one of the plaintiffs, any one of their attorneys, or any one representing them request the right to inspect or examine said last will and testament or did any one of them request the right to have said last will and testament examined by a handwriting expert or an expert on the authenticity of questioned documents and questioned signatures during the time said last will and testament of the testator was in the possession of this affiant."

No additional evidence was offered nor received on the motion for a new trial.

The trial court sustained the motion of the appellees for a new trial on the basis of their Specification 4 therein, that being the specification alleging newly discovered evidence.

The error assigned here is that the Court erred in sustaining appellees' motion for a new trial.

Appellees filed cross-errors but, in view of the conclusion we have reached, it will not be necessary to consider them.

There are certain well established principles of law which must guide our decision in this case.

An Appellate Tribunal will search the record for reasons to affirm the judgment of the trial court. The burden is on the appellants to show reversible error by the record as all presumptions are in favor of the judgment and ruling of the trial court. *City of Ft. Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N. E. 2d 544; *Grider* v. *Scharf* (1947), 225 Ind. 251, 73 N. E. 2d 75, 73 N. E. 2d 749; *Barksdale* v. *State* (1925), 196 Ind. 392, 394, 147 N. E. 765; *Trick* v. *Eckhouse* (1924), 82 Ind. App. 196, 200, 145 N. E. 587.

As a general rule a new trial will be granted only as to the whole case and not as to separate issues. *Wilson* v. *Brookshire* (1891), 126 Ind. 497, 25 N. E. 131; *Johnson* v. *McCulloch* (1883), 89 Ind. 270; *Morris* v. *State* (1819), 1 Blckf. 37; *Montgomery Ward & Co.* v. *Thalman* (1950), 120 Ind. App. 473, 88 N. E. 2d 53, 89 N. E. 2d 294, 93 N. E. 2d 352; *Luken* v. *Fickle* (1908), 42 Ind. App. 445, 84 N. E. 561; *Whipperman* v. *Dunn* (1890), 124 Ind. 349, 24 N. E. 1045.

Where the trial court is without authority to grant a new trial as to part of the issues, an order granting a new trial as to one issue has the legal effect of granting a new trial to all the issues. *The State ex rel. Downard, Administrator* v. *Templin* (1890), 122 Ind. 235, 23 N. E. 697. See also 22 West Indiana Law Encyclopedia, *New Trial*, Sec. 4, p. 10.

In 2 West Indiana Law Encyclopedia, *Appeals*, Sec. 558, p. 478, it is stated: "The grant or denial of a motion for new trial because of newly discovered evidence is largely discretionary and hence reviewable only for manifest abuse of discre-

tion." *Bartley* v. *Chicago & E. I. Ry. Co.* (1942), 220 Ind. 354, 41 N. E. 2d 805; *Krietenstein* v. *Robinson* (1955), 126 Ind. App. 83, 129 N. E. 2d 368; *Koeneman* v. *Aldridge* (1955), 125 Ind. App. 176, 122 N. E. 2d 345; *Wahl Company* v. *Compton* (1941), 109 Ind. App. 631, 36 N. E. 2d 942; *Cobler, Admr.* v. *Prudential Life Ins. Co.* (1941), 108 Ind. App. 641, 31 N. E. 2d 678; *Hauser* v. *George* (1935), 100 Ind. App. 346, 195 N. E. 592.

In *Azimow* v. *Stoker* (1960), 131 Ind. App. 195, 166 N. E. 2d 887, 889, Judge Bierly speaking for this court said:

> "It has been held by our Supreme Court that the granting of a new trial on the ground of newly discovered evidence lies within the sound judicial discretion of the trial court; that the nature of the evidence warranting the granting of the motion for a new trial on such ground, the newly discovered evidence, must be: (1) That such evidence must clearly appear sufficient to probably effect a change in the result of the previous trial, (2) That such evidence must appear not merely to be cumulative or impeaching, and (3) It must appear that the failure to produce the evidence at the trial was not due to a lack of reasonable diligence on the part of the defendant. . . . Bartley v. Chicago & E. I. Ry. Co., 1942, 220 Ind. 354, 41 N. E. 2d 805, 807. In Bartley, *supra,* the court said: 'It is well settled that applications for a new trial on the ground of newly discovered evidence are looked upon with disfavor. . . . Granting such a motion is within the sound discretion of the trial court whose ruling *will not be disturbed except for abuse of such discretion.*' (Our emphasis.)"

The record in this case discloses that on January 15 and 16, 1959, the persons whose signatures appear on the purported will had stated in substance that they, at decedent's request, signed a folded paper. The decedent who asked them to sign it did not state it was

his last will and testament, and they further stated they did not see him sign it nor did they sign in the presence of each other.

The statement of Audrey Gettelfinger, dated January 16, 1959, was signed and sworn to before a notary public. At the trial her testimony was in direct conflict with prior statements.

On the whole record before us in this case, it seems that the minds of reasonable men might well have differed as to whether decedent signed his last will and testament on February 22, 1951, March 22, 1951, or June 3, 1957, and as to whether the witnesses signed it in the presence of each other or whether decedent asked them to sign it as witnesses to his will.

Under such circumstances it seems to us the trial court erred in sustaining appellants' motion to direct the jury to find for them and in giving such instruction. *Morrow, Inc.* v. *Munson* (1958), 129 Ind. App. 113, 150 N. E. 2d 256; *Robertson Bros. Dept. Store* v. *Stanley* (1950), 228 Ind. 372, 90 N. E. 2d 809; *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734.

In considering appellees' motion for a new trial, the court not only had the right but the duty to consider the whole record in this case. In doing this the court may also have concluded that there was such a conflict in the evidence that it should have been submitted to the jury.

The fact that the court may have based its action in granting the motion for a new trial on Specification 4 does not prevent this court from considering the whole record before it. This does not mean that we do not believe the court properly sustained appellees' motion on that specification. The affidavits of the parties presented conflicting statements and con-

tentions which the court was required to resolve. In our opinion the court did so resolve them and in so doing did not abuse its discretion.

Judgment affirmed.

Bierly, Gonas, Kelley, JJ., concur.

NOTE.—Reported in 172 N. E. 2d 888.