BARRETT E. AUSTIN, II *v.* HERBERT C. DURBIN AND JANE C. DURBIN, HIS WIFE, CLIFTON E. HARTMAN AND ANNA M. HARTMAN, HIS WIFE, CARL R. AUSTIN AND JUDY C. AUSTIN, HIS WIFE, AND DONALD J. MOSER AND KATHRYN JO MOSER, HIS WIFE.

[No. 1-173A8. Filed May 16, 1974.]

*Herbert F. Naville, Naville, Crumbo & Leist,* of New Albany, for appellant.

*Robert A. Kelso,* of New Albany, for appellees.

LYBROOK, J.—Defendant-appellant Austin appeals from a judgment permanently enjoining him from constructing a roadway over a lot which he purchased in a restricted subdivision.

Austin presents four alleged errors for review:

(1) Whether the trial court erred in granting an injunction which purportedly exceeded the prayer for relief.

(2) Whether the trial court erred in failing to find that plaintiffs-appellees Durbin et al., were estopped from seeking an injunction due to prior acquiescence in the use of said lot as ingress and egress to an adjoining tract.

(3) Whether the roadway contemplated by Austin was prohibited by the applicable restrictions.

(4) Whether Austin was entitled to a new trial because of newly discovered evidence.

The basic question raised in this appeal concerns the propriety of the court in enjoining the construction and use of a roadway across a lot which had been restricted to residential use. Resolution of this issue requires a recitation of some of the surrounding pertinent facts.

Appellees, home owners in Altawood Subdivision in Floyd County, sought to enjoin Austin, a developer, from constructing a 50 foot roadway through Lot No. 33 in the subdivision. Austin had purchased Lot No. 33, together with 28.5 acres adjoining it, from the New Albany Girl Scout Council. The Scouts had used the 28.5 acre tract as a camp ground, and Lot 33 for ingress and egress thereto on various occasions for a period of 18 years.

All lots in Altawood Subdivision, including Lot 33, were subject to a number of restrictions including *inter alia,* prohibitions against erection of structures other than single family dwellings and provisions establishing set-back lines and easement strips for utilities. It was further provided that: "All lots in the tract shall be known and described as residential lots."

Lot No. 33 was conveyed to Austin subject to the following additional restrictions:

"Lot No. 33, Plat No. 631, of the Floyd County, Indiana records, above described, is conveyed subject to any and all easements of record affecting the same and is also conveyed subject to any and all restrictions and protective covenants pertaining to said Plat No. 631 of the Floyd County, Indiana records, and all of the above described real estate is conveyed subject to any and all easements and any and all valid and enforceable restrictions and protective covenants of record affecting the same."

Austin's central complaint is addressed to the granting of the permanent injunction by the court, which ordered:

"That the defendant Barrett E. Austin II, and his employees, agents and all persons acting by or under his authority and direction, or in his behalf are perpetually enjoined from constructing a roadway across or over any portion of Lot No. 33 in Plat No. 631 known as Altawood Subdivision, Floyd County, Indiana, or from using said lot for any purpose except residential."

Austin testified that he had sub-divided the 28.5 acre tract into 16 proposed residential lots and needed the roadway across Lot 33 for ingress and egress, contending there was no other feasible entrance into his land. He proposed to link the 50 foot roadway across the lot to Hill Top Road in Altawood Subdivision. The evidence revealed that Hill Top Road was a circular dead end or *cul-de-sac* street. Appellee lot owners maintain that they purchased their homes in this location because of the relative privacy, and that permitting the 50 foot roadway across Lot 33 would not only change the character of the lot but would also transform a relatively quiet street into a more heavily travelled thoroughfare thereby changing the character of the neighborhood.

Appellee lot owners also remind us that at the time of trial Austin had not as yet imposed any formal restrictions upon the use of his land, retaining the option of changing his development plans at any time.

## ISSUE 1.

Appellant first contends that the court's judgment, interpreted literally, would prohibit him from even constructing a driveway into his own residence, should he elect to build one on Lot 33, and that therefore the injunction exceeds the prayer for relief. We believe that this construction is strained. The court, in enjoining the location of a roadway and in prohibiting the use of the lot for any other purpose except residential, did not prohibit the future construction of a driveway to a residence.

The words "roadway" and "driveway" are not synonymous. The term "roadway" is ordinarily used to designate a strip of land over which a road is constructed. *Lake Garda Imp. Ass'n.* v. *Battistoni* (1971), 160 Conn. 503, 280 A.2d 877; *Franck Bros., Inc.* v. *Rose* (Mo. 1957), 301 S.W.2d 806.

On the other hand, a "driveway" has been described as a path leading from a house or garage to a street used especially by automobiles. *Dolske* v. *Gormley* (1962), 58 Cal.2d 513, 375 P.2d 174, 25 Cal. Rptr. 270.

We therefore conclude that the injunction in the case at bar does not prohibit the construction and use of a driveway in connection with a residence. A driveway from either a house or a garage to an adjacent street, could reasonably be considered incidental to the residential purpose.

## ISSUE 2.

The evidence reveals that for some 18 years prior to trial the Girl Scouts had crossed Lot 33 in gaining access to their camp ground. This occurred two or three times a year.

Austin argues that since the surrounding lot owners acquiesced in this practice, they are now estopped from enjoining Austin. He reasons that he was only enlarging the existing right of way used by the Girl Scouts.

Appellant is correct in his argument that the right to enforce building restrictions may be lost by laches and

acquiescence to prior violations. *Thompson on Real Property* (1962 Repl. Vol. 7), § 3173, p. 197. Also see, *Schwartz* v. *Holycross* (1925), 83 Ind. App. 658, 149 N.E. 699. However, our examination of the authorities leads us to conclude that the force of these equitable principles depends upon the factual situation involved in the particular case.

In the case at bar, one of appellee lot owners testified that the reasons for not suing the owners of Lot 33 for using said lot as a roadway were (1) the owner was the Girl Scouts and (2) they used it only a few times a year.

Considering the abundance of other prospective defendants who may richly deserve to be sued, we can understand appellees' reluctance to single out the Girl Scouts as a prime target for litigation.

Of greater legal import, however, is the obvious difference between a 50 foot roadway improved for general vehicular travel and opened to the general public as compared to an occasional use by various bands of Girl Scouts.

Appellant cites *Wischmeyer* v. *Finch* (1952), 231 Ind. 282, 107 N.E.2d 661, wherein it was held that injunctive relief will be denied in cases involving enforcement of restrictions where complainant has substantially violated the restriction or has been guilty of laches, waiver or acquiescence. In the instant case there is no evidence that the complaining lot owners themselves have violated any restrictions. Neither can their acquiescence in the occasional use of Lot 33 as a means of access to a Girl Scout camp ground, necessarily bar appellees from objecting to the construction and use of a public roadway, improved to county specifications and opened to traffic daily by all members of the public.

We conclude that the trial court was justified in finding that appellees were not barred under the doctrine of laches.

## ISSUE 3.

Austin next contends that the applicable restrictions do not expressly prohibit the building of a roadway, and that the restriction that the property be used only for residential purposes is not violated by its use as a means of access to an adjoining tract, citing *Bove* v. *Giebel* (1959), 169 Ohio St. 325, 159 N.E.2d 425.

Appellees respond by contending that the clearly expressed intent of the restriction was to limit the property in Altawood Subdivision to residential use, and that the streets, such as Hill Top Road, were to be used as access to only the homes in that subdivision. At this point we observe parenthetically, that appellees' argument has considerable force in view of the fact that Hill Top Road at the location in question is in the shape of a *cul-de-sac*. Such a design and layout does not suggest that it was intended to be used for through traffic in the future.

It is generally conceded that covenants restricting the use of property may be enforced by injunction in a proper case. 43 C.J.S. *Injunctions*, § 87. It is equally well established that the granting or refusing of relief from the violation of a restriction is a matter within the discretion of the trial court and is to be governed by equitable principles. *Vierk* v. *Ritenour* (1961), 131 Ind. App. 547, 172 N.E.2d 679.

Appellant leans heavily upon *Bove* v. *Giebel, supra,* because of an analogous fact situation. *Bove* involved a lot in a subdivision restricted "for residential purposes only", and the owner of the lot sought to use a portion of it as a means of ingress and egress to and from a six acre adjoining tract. While analogous to an extent, *Bove* is readily distinguishable from the case at bar in that (1) *Bove* involved a 25 foot access strip rather than the 50 foot roadway in the case at bar; (2) In *Bove* the access strip was connected to a six acre tract which was to be used for only two-one family dwellings, rather than the 16 lots proposed by Austin in the

case at bar; (3) In *Bove* the strip was connected to another street instead of the *cul de sac* in the case at bar. *Bove* also impliedly rested its finding upon the fact that the same restrictions applicable to the subdivision lot would be imposed upon the two lots in the adjacent tract, whereas Austin in the instant case had not yet imposed any formal restrictions and retained the right to change his development plans. In this regard it was stated in *Bove* that:

> "As to property in a subdivision, that is restricted to use for residence purposes only, there have been decisions preventing its use as a means of ingress to and egress from property outside the subdivision that is not restricted to the same extent as the property within the subdivision. See 14 American Jurisprudence, 635, Section 255 and supplement thereto, 25 A.L.R.2d 904, 175 A.L.R. 1191, 1207, 39 A.L.R. 1083."

Analysis of cases reported at 20 Am.Jur.2d, *Covenants, Conditions, etc.* § 232 and at 25 A.L.R.2d 904 and the Later Case Service referable to the above A.L.R. citation, reveals that the cases are divided fairly evenly on the question of whether relief should be granted when a right of way is placed across a lot in a restricted subdivision. The varied results reached in these cases does not suggest a diversity of opinion, but rather, as applicably stated at 25 A.L.R., at p. 906:

> "These varying results have largely been produced by differences in the language of the restrictions, in the objects sought to be obtained, and in the condition and circumstances surrounding the premises involved. Generally speaking, the cases disclose that the courts are inclined to hold that the maintenance, use, or grant of a right of way across property restricted in its use is a violation of the restriction if such maintenance, use, or grant seems to be inconsistent with the parties' intention in creating or agreeing to the restriction and with the object sought to be thereby accomplished, while if it does not interfere with the carrying out of the parties' intention and the purpose of the restriction, it will not be held to be a violation."

The evidence in the case at bar suggests that the proposed 50 foot roadway was inconsistent with the intention to re-

strict the lots in Altawood Subdivision to residential purposes. We conclude that the trial court was not in error in granting the relief prayed for.

## ISSUE 4.

Finally, Austin argues that the trial court erred in failing to grant his Motion to Correct Errors on the basis of newly discovered evidence. The alleged evidence, presented in the form of affidavits attached to the Motion to Correct Errors, pertains to the availability of access to Austin's property from a different direction.

The first affidavit, that of a consulting engineer, summarizes the results of a survey conducted to determine the feasability of constructing a road for ingress and egress from this different direction. In the affiant's opinion, the lowest grade level which could be achieved in constructing the access road would be seventeen percent. The second affidavit, that of the Floyd County Engineer, states that it is against the policy of the Board of Commissioners to approve a grade in excess of twelve percent.

In *Shaw* v. *Shaw* (1973), 159 Ind. App. 33, 304 N.E.2d 536, the court quoted the following summarization of a litigant's burden in seeking a new trial on the basis of newly discovered evidence from *Kelly* v. *Bunch* (1972), 153 Ind. App. 407, 287 N.E.2d 586:

> "A motion for a new trial based on *newly discovered evidence should be received with great caution and the alleged evidence should be carefully scrutinized.* The newly discovered evidence must be material, and must be more than just cumulative or impeaching. The party seeking a new trial because of newly discovered evidence must show that *the evidence is such that it could not have been discovered before the trial by the exercise of due diligence,* and must show that the evidence is such that it would reasonably and probably result in a different verdict. *The granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court,* whose decision will be disturbed only for a manifest abuse thereof."

The court further noted that it is incumbent on the party presenting the newly discovered evidence to overcome the strong presumption that the alleged evidence could have been discovered in time to use at trial. See also, *Cobler* v. *Prudential Life Insurance Co.* (1941), 108 Ind. App. 641, 31 N.E.2d 678.

In our opinion, Austin has failed to rebut this presumption. In fact, in his Motion to Correct Errors, Austin fails to allege that the evidence could not have been discovered before trial by the exercise of due diligence. Rather, it is merely alleged that he could not have, with due diligence, foreseen that he would need the evidence at trial. Moreover, the affidavit of the consulting engineer reveals that an informal survey to determine the feasibility of constructing the access road which is the subject of the alleged newly discovered evidence was conducted several months prior to trial.

We therefore cannot say that the trial court abused its discretion in failing to grant Austin's Motion to Correct Errors based on alleged newly discovered evidence.

No reversible error having been demonstrated in the trial proceedings, judgment is hereby affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 310 N.E.2d 893.