COLUMBIA CLUB, INC.,
Appellant–Plaintiff,

v.

AMERICAN FLETCHER REALTY CORPORATION, an Indiana Corporation, Formerly known as Circle Realty Corporation; AF Center Limited Partnership, an Ohio Limited Partnership; and Monument Tower Associates Limited Partnership, a Delaware Limited Partnership, Appellees–Defendants.

No. 49A02–9901–CV–61.

Court of Appeals of Indiana.

Dec. 3, 1999.

---

Rodney V. Taylor, Michael A. Beason, Christopher and Taylor, Indianapolis, Indiana, Attorneys for Appellant.

David O. Tittle, Nana Quay–Smith, James P. Strenski, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge.

The Columbia Club appeals the trial court's grant of summary judgment in favor of the AF Center Limited Partnership ("AF Center") and Monument Tower Associates ("Monument Tower") in a breach of contract action.[1] We affirm.

---

1. We will collectively refer to AF Center and Monument Tower as "the Partnership."

*Issues*

Columbia Club raises the following consolidated and restated issues for our review:

1. Whether the trial court erred in granting the Partnership's motion for summary judgment holding that the indemnification provision contained in the Agreement was a covenant which runs with the land, and thus, binds subsequent grantees and releases the Partnership from liability under the indemnification provision; and

2. Whether a novation is required for the indemnification provision contained in the Agreement to run with the land.

*Facts and Procedural History* [2]

On July 27, 1987, the Columbia Club entered into a contract with AF Center and American Fletcher Realty Corporation ("American Fletcher"). This contract, entitled "Agreement Relating to Construction Requirements and Easements" (the "Agreement"), was subsequently recorded in the county recorder's office. At the time of the Agreement, American Fletcher was the fee simple owner of property leased to AF Center upon which AF Center proposed to construct an office building and parking garage, later known as the Bank One Tower. The Columbia Club is the fee simple owner of property adjacent to the property where the Bank One Tower was constructed.

The Agreement contained construction requirements and created cross-easements between AF Center, American Fletcher, and the Columbia Club. The parties granted cross-easements in order to facilitate the construction of the Bank One Tower and the accompanying parking garage and to allow the Columbia Club to continue operating as a social club. The Agreement also contained an indemnity provision.

Thereafter, AF Center assigned the option to lease the property owned by American Fletcher to Monument Tower. During 1987–88, American Fletcher and Monument Tower constructed the Bank One Tower. On November 28, 1990, an addendum to the Agreement was executed between Columbia Club, American Fletcher, and Monument Tower which did not alter the indemnity provision in the Agreement. The indemnity provision remained in full force and effect.

On December 2, 1991, American Fletcher and Monument Tower assigned all of their interests in the Bank One Tower building and property to an unrelated third party. American Fletcher and Monument Tower have not held any fee or leasehold interest in the Bank One Tower building and property since December 2, 1991.

Around December 31, 1995, it was discovered that the Columbia Club had suffered structural damage from construction of the Bank One Tower which resulted in raw sewage flowing into the building. On December 30, 1997, the Columbia Club filed suit against American Fletcher, AF Center, and Monument Tower for indemnification from the damages suffered from the construction of the Bank One Tower building. Consequently, AF Center and Monument Tower moved for summary judgment, which was later granted by the trial court. This appeal ensued.

*Discussion*

### I. Summary Judgment Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bastin v. First Indiana Bank*, 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* When reviewing a grant or denial of summary judgment, this court applies the same standard as does a trial court. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 537 (Ind.1997). Summary judgment should be

---

**2.** We heard oral argument in this case on November 10, 1999, in Indianapolis, Indiana.

granted only if the designated evidentiary material shows that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C); *Hoskins v. Sharp,* 629 N.E.2d 1271, 1276 (Ind.Ct. App.1994). On review, we may not search the entire record to support the judgment, but may only consider that evidence which had been specifically designated to the trial court. *North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d 420, 422 (Ind.Ct.App. 1995). The party appealing the denial of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was erroneous. *See Warner Trucking, Inc. v. Carolina Cas. Ins. Co.,* 686 N.E.2d 102, 104 (Ind.1997). We resolve any doubt about a fact or any inference to be drawn from it in favor of the nonmoving party. *Claxton v. Hutton,* 615 N.E.2d 471, 473 (Ind.Ct.App.1993). Although the trial court made findings of fact and conclusions of law, it does not change the nature of our review of summary judgment. The entry of specific facts and conclusions in a summary judgment order aids our review by providing us with a statement of reasons for the trial court's decision, but it has no other effect. *P.M.S., Inc. v. Jakubowski,* 585 N.E.2d 1380, 1381 (Ind.Ct.App.1992). Summary judgment should not be used as an abbreviated trial. *Brunner v. Trustees of Purdue Univ.,* 702 N.E.2d 759, 760 (Ind.Ct.App.1998), *trans. denied.*

## II. Real Covenant

The Columbia Club contends that the trial court erred in granting the Partnership's motion for summary judgment. Specifically, the Columbia Club argues that the indemnification provision contained in the Agreement is not a covenant which ran with the land, and thus, the Partnership is liable under the Agreement for damages to the Columbia Club as a result of the construction process of the Bank One Tower and the accompanying parking garage. We disagree.

## A. Indemnification Provision is an Affirmative Covenant

■ A person typically cannot be held liable for breach of contract unless it is shown that he was a party to the contract. *See Evansville & S.I. Traction Co. v. Evansville Belt Ry. Co.,* 44 Ind.App. 155, 162, 87 N.E. 21, 22–24 (1909). Contractual obligations are personal in nature and privity of contract is essential for the establishment of such liability. *Boswell v. Lyon,* 401 N.E.2d 735, 743 (Ind.Ct.App.1980). However, Indiana recognizes an exception to the privity of contract requirement: it is called privity of estate. *See generally Conduitt v. Ross,* 102 Ind. 166, 26 N.E. 198 (1885). In Indiana, the obligations of a contract are imposed upon persons who stand in privity of estate with the original covenantor as successive grantees. *Evansville,* 87 N.E. at 21; *Wells v. Benton,* 108 Ind. 585, 8 N.E. 444, 447 (1886). Thus, the law of contracts and property may both be implicated in a breach of contract action, especially when a contract concerns promises in instruments relating to real estate, which are known as covenants.

■ Our first inquiry is to determine whether the indemnification provision contained in the Agreement is a covenant or merely a contractual provision binding only those in privity of contract. Generally, a covenant is an agreement duly made to do, or not to do, a particular act. *Vierk v. Ritenour,* 131 Ind.App. 547, 172 N.E.2d 679, 683 (1961). In modern usage, the term "covenant" generally describes promises relating to real property that are created in conveyances or other instruments. Covenants may be express or implied as a matter of law. *Id.* Moreover, covenants are a species of express contract. *Id.* We believe that the indemnification provision contained in the Agreement is a covenant because it essentially is a promise created in a contract, the Agreement, which granted cross easements between the original parties.

■ The nature of the burden determines whether the covenant is negative, affirmative, or restrictive. Negative covenants call for the covenantor to refrain from doing some act. If the required performance limits the uses that can be made by the owner or occupier of land, the covenant is usually called a restrictive covenant. We have held that restrictive covenants are, in essence, a form of express contract between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner. *Burnett v. Heckelman,* 456 N.E.2d 1094, 1097 (Ind.Ct.App.1983). In contrast, affirmative covenants call for the covenantor to do some act, such as paying money, supplying goods or services, or performing some other act, either on or off the land owned by the covenantor. We have defined affirmative covenants as a form of express contract between a grantor and a grantee which imposes an affirmative burden on the latter. *See generally Moseley v. Bishop,* 470 N.E.2d 773, 777 (Ind.Ct. App.1984) (defendant contracted to permanently maintain the drain tile on land for the benefit of plaintiff's property). In the present case, the indemnity provision contained in the Agreement may be characterized as an affirmative covenant because under the terms of the original Agreement, American Fletcher and AF Center expressly contracted to reimburse Columbia Club for any damages it incurred as a result of the construction of the Bank One Tower and the accompanying parking garage. R. 21.

■ Land use covenants create rights and duties between the original promising parties. The grantee's rights are called the "benefit" of the covenant, while the grantor's duties are called the "burden." Covenants are either personal, enforceable only by the original parties to an agreement, or they "run with the land." When covenants run with the land, they may be enforced against remote grantees. Covenants which run with the land are typically referred to as "real covenants."

*See generally* ROGER A. CUNNINGHAM, THE LAW OF PROPERTY 467 (1984); RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60 (1999).

■ Analysis of a covenant to determine whether it runs with the land typically involves two inquiries: (1) whether the covenant is one which, under any circumstances, may run with the land; and (2) whether it was the intention of the parties as expressed in the agreement that it should run with the land. *Conduitt,* 26 N.E. at 198. The Indiana Supreme Court has held that "[a] covenant may contain apt words to make it a continuing covenant, yet if its nature or the subject matter of it is such that it does not concern some interest or estate in land, either existing or created by it, it cannot run with the land." *Id.* at 199. We have more recently held that a real covenant imposing an affirmative burden will run with the land if: (1) the covenantor and covenantee intend it to run; (2) the covenant touches and concerns the land; and (3) there is privity of estate between subsequent grantees of the original covenantor and covenantee. *Moseley,* 470 N.E.2d at 776. Therefore, we must apply the three factors articulated in *Moseley* to determine whether the covenant runs with the land, and thus binds subsequent grantees to the land.

### B. The Affirmative Covenant Runs with the Land

#### 1. Intent

■ First, we must determine whether the covenanting parties objectively intended the covenant to be enforceable against remote grantees to the land. Columbia Club argues that the covenanting parties did not intend for the indemnity provision of the Agreement to run with the land. Specifically, Columbia Club refers to the language found in section 7 of the Agreement under the heading "INDEMNITY OF PARTIES." Section 7 provides in pertinent part that:

The respective grantees of the rights and easements granted herein hereby covenant and agree to save and keep harmless and indemnify the respective grantors of the rights and easements granted herein and their successors and assigns, of, from and against any and all liabilities, losses, damages, costs, expenses, causes of action, suits, penalties, claims, demands, and judgments of every kind and nature, including, without limitation, reasonable attorneys' fees and expenses of defense, arising out of or in connection with any ... damage ... which shall or may arise out of or in connection with the construction process, or as a result of the placement and/or existence of the building. ...

R. 21. Columbia Club argues that there is no indication in the plain text of section 7 that the parties intended that the indemnity provision of the Agreement should run with the land.

The Partnership argues that the parties to the Agreement unambiguously intended for the covenant to run with the land. The Partnership refers to section 8(a) of the Agreement under the heading "EFFECT OF EASEMENTS." Section 8(A) provides that:

All of the provisions of this agreement, including the rights and benefits and the restrictions and burdens, shall run with the land and shall inure to the benefit of and be binding upon Columbia Club, American Fletcher and AF Center and their respective successors, assigns, and/or mortgagees, as their interests may appear.

R. 21. With regard to section 8 of the Agreement, Columbia Club argues that it has no effect on the indemnity provision of the Agreement contained in section 7, because section 8, titled "EFFECT OF EASEMENTS," only applies to the easements granted between the parties in the Agreement, not the indemnity provision.

After examining the entire Agreement, we believe that the parties to the original Agreement intended for the indemnification provision to run with the land, and thus, bind subsequent grantees to the land.

The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. *Thiebaud v. Union Furniture Co.,* 143 Ind. 340, 42 N.E. 741, 742 (1896). Furthermore, specific words and phrases cannot be read exclusive of other contractual provisions. *Buck v. Banks,* 668 N.E.2d 1259, 1261 (Ind.Ct.App.1996). In addition, the parties' intentions must be determined from the contract read in its entirety. *Id.* We attempt to construe contractual provisions so as to harmonize the agreement. *First Fed. Sav. Bank v. Key Markets, Inc.,* 559 N.E.2d 600, 603 (Ind.1990). Moreover, no particular language is required to demonstrate an intent to run with the land. *Adult Group Properties, Ltd. v. Imler,* 505 N.E.2d 459, 465–466 (Ind.Ct.App.1987), *trans. denied.* Therefore, a real covenant may exist without the words "assigns" or "grantees" but when these or equivalent words are used, they become persuasive of the intent of the parties. *Conduitt,* 26 N.E. at 198.

Although not relied on by the Partnership, we believe that section 8(c) of the Agreement supports the Partnership's contention that the indemnity provision contained in the Agreement runs with the land, and thus, binds subsequent grantees to the land. Section 8(c) of the Agreement provides that:

If the owner of Tracts "A" or "B" [3] shall transfer its interest in such Tracts, then the liability of the transferor for the breach of any covenant contained herein occurring after the date of such transfer shall automatically terminate, and the transferee shall, by the acceptance of

---

**3.** The Agreement refers to the property upon which the Columbia Club resides as Tract "A." R. 34. The property upon which the Bank One Tower and accompanying parking garage was constructed is referred to as Tract "B" in the Agreement. R. 35.

the conveyance of such interest, automatically accept, assume, and agree to perform or observe such covenant after the date of such transfer.

R. 21. Read in conjunction with section 8(a), the Agreement clearly expresses the parties intent that the indemnification provision contained in the Agreement is a covenant which runs with the land, and thus binds subsequent grantees. Although both sections 8(a) and 8(c) of the Agreement are under the heading "EFFECT OF EASEMENTS," we believe that the content of the sections control over the heading. We have held that a contract is to be construed from the verbiage of its contents and not the title. *Board of Comm'rs of Madison County v. Midwest Assocs.*, 144 Ind.App. 264, 268, 245 N.E.2d 853, 855 (1969), *trans. denied.*

Furthermore, the indemnification provision was extremely important to the Columbia Club, because the subterranean easement it granted to the original parties to the Agreement was utilized by them to build the structural foundation for the Bank One Tower and accompanying parking garage. It was highly probable that the social club would incur damages after the Bank One Tower and accompanying parking garage were completed and ownership of the property was transferred to a third party. Given the importance of the indemnification provision contained in the Agreement to Columbia Club, it is improbable that the parties intended the Agreement to be purely personal and not binding on subsequent grantees of the land. Thus, we hold as a matter of law that the facts surrounding the Agreement and the language used in it show an intent to create a covenant running with the land.

### 2. Touches and Concerns

■ Because we have determined that the original parties to the Agreement intended for the affirmative covenant to run with the land, we must next determine whether the covenant "touched and concerned" the land with which it was to run. Columbia Club argues that the indemnity

provision of the Agreement is not appurtenant to the land or the easement. However, the Partnership contends that the covenant "touches and concerns" the land because it is inextricably intertwined with the land. Specifically, the Partnership argues that the Bank One Tower would not exist without the subterranean easement granted from Columbia Club. Moreover, the Partnership asserts that the covenant was part and parcel of the same document which granted the easement and concerned the project for which the easement was granted.

■ Unless a real covenant's benefit "touches and concerns" some estate in land, the benefit cannot run to the covenantee's grantee. Similarly, unless the burden "touches and concerns" some estate in land, the burden cannot run. We have held that the "touch and concern" requirement ensures that one purchasing land will be bound by his grantor's contract only where the contract has some logical connection to his use and enjoyment of the land. *Moseley*, 470 N.E.2d at 777. Therefore, a successor to the covenantor's interest in property may be bound by the covenant if it is logically connected to that property interest. *Id.* Conversely, a successor to the covenantee's property interest may enforce the covenant if it is logically connected to his property. *Id.* The "touch and concern" requirement is the only essential requirement for the running of covenants which focuses on an objective analysis of the contents of the covenant itself, rather than the intentions and relationships between the parties.

The clearest example of a covenant that "touches and concerns" the land is one which calls for a party to do, or refrain from doing, a physical act on the land. We have held that a covenant to maintain a tile drain was logically connected to the land because the drain was buried on the land. *Id.* Moreover, the Indiana Supreme Court held that a covenant to pay for any additions made to a party wall ran with the land because the covenant was created in

the instrument that created the right to use the wall. *Conduitt*, 26 N.E. at 199. The Indiana Supreme Court in *Conduitt* reasoned that:

> When an instrument conveys or grants an interest or right in land, and at the same time contains a covenant in which a right attached to the estate or interest granted is reserved ... such covenant is one which may become annexed to and run with the land, and bind its owners successively. When such a grant is made, and contains a covenant so expressed as to show that it was reasonably the intent that it should be continuing, it will be construed as a covenant running with the land.

*Id.*

The Restatement of Property addresses the liability of a successor in interest for real covenants by providing that:

> The successors in title to land respecting the use of which the owner has made a promise can be bound as promisors only if: a) the performance of the promise will benefit the promisee or other beneficiary of the promise in the physical use or enjoyment of the land possessed by him; or b) the consummation of the transaction of which the promise is a part will operate to benefit and is for the benefit of the promisor in the physical use or enjoyment of the land possessed by him, and the burden of the land of the promisor bears a reasonable relation to the benefit received by the person benefited.

Restatement of Property § 537(a)-(b) (1944).

We believe that the covenant to indemnify the Columbia Club for damages arising from construction of the Bank One Tower and accompanying parking garage is logically connected to both the Columbia Club's property upon which the social club is built and the property upon which the Bank One Tower and accompanying parking garage is built. Thus, we hold as a matter of law that the "touch and concern" requirement is satisfied for the covenant to run with the land.

### 3. Privity

 Finally, in order for benefits and burdens of a covenant to devolve upon successors in interest there must be privity of estate between the parties. The term privity describes a relationship between the parties interested in a covenant. Under Indiana property law, there are two types of privity, horizontal privity and vertical privity.

 Horizontal privity is generally established by evidence that the original parties to the covenant had some mutual or successive interest either in the land burdened by the covenant or the land benefitted by it. *Moseley*, 470 N.E.2d at 777. The requirement of horizontal privity may be met by proof that the covenantee has a leasehold and the covenantor has the reversion in the affected land. *E.g., National Mfg. & Eng'g Co. v. Farmers' Trust & Sav. Bank*, 204 Ind. 535, 185 N.E. 146, 148 (1933). Similarly, the parties are in privity where one has an easement in land owned by the other, so long as the covenant concerns the easement. *E.g., Conduitt*, 26 N.E. at 198; *Pittsburg, Cincinnati, Chicago & St. Louis Ry. v. Wilson*, 34 Ind.App. 324, 72 N.E. 666, 667 (1904). Also, privity of estate may be found between the original covenantors even where they did not hold simultaneous interests in the land if the covenant concerns land transferred by one party to the other. *E.g. Brendonwood Common v. Franklin*, 403 N.E.2d 1136, 1141 (Ind.Ct.App.1980).

 Vertical privity is the most easily satisfied form of privity of estate. It is established where the party seeking to enforce the covenant and the party against whom it is to be enforced are successors in title to the property of the covenantee and covenantor respectively. *Moseley*, 470 N.E.2d at 777. Additionally, to establish privity, a party generally must prove that the covenant was made in the context of a transfer of an interest in the

affected land, whether by lease or by deed conveying the property or an easement therein. *Id.*

■ The Partnership contends that Columbia Club is in privity of estate with the Partnership as well as the Partnership's successors. Specifically, the Partnership argues it is in horizontal privity with Columbia Club because it had an easement in land owned by Columbia Club under the Agreement and the covenant concerns the easement, and thus, it and Columbia Club held a simultaneous interest in the land at one time. With regard to vertical privity, the Partnership argues that even though the successive grantees of the Partnership were not parties to the Agreement, the obligations of a contract are imposed upon persons who stand in privity of estate with the original covenantor as successive grantees.

We believe the privity of estate requirement has been satisfied in order for the covenant to run with the land. The Columbia Club granted a subterranean easement to the original parties to the Agreement in order for them to build the structural foundation for the Bank One Tower and accompanying parking garage. In exchange for the grant of this easement, the original parties to the Agreement promised to reimburse the Columbia Club for damages arising from the construction of the building and parking garage. Therefore, the original covenanting parties held successive interest in the land burdened by the covenant. Moreover, the successors-in-interest to the property upon which the Bank One Tower and parking garage are located are in vertical privity with the original covenantors of the Agreement. Because the covenant to reimburse and the grant of the subterranean easement was contained in the same document, the Agreement, the covenant was clearly made in the context of a transfer to the original owners of the Bank One Tower property of an easement in the Columbia Club's land. We hold as a matter of law that the indemnification provision contained in the Agreement is a covenant which runs with the land, and thus, binds the subsequent grantees to the land. Because the Partnership transferred all of their interest in the Bank One Tower property to an unrelated third party, they are no longer liable to Columbia Club for damages arising from the construction process. Thus, we conclude that the trial court properly granted the Partnership's motion for summary judgment.

### III. Novation

Columbia Club contends that the trial court erred in granting the Partnership's motion for summary judgment because any substitution of indemnitee parties to the Agreement requires a novation, and the Agreement lacks any language, express or implied, which indicates an intention to create a novation. The Partnership argues that Columbia Club's novation argument has been waived on appeal because it never advanced a novation theory in its complaint or in its responses to the Partnership's motion for summary judgment, and thus, neither the trial court nor the Partnership had notice of this contention before summary judgment was rendered.

Columbia Club argues that its novation argument has not been waived, and thus, we may review it. Specifically, Columbia Club argues that the Partnership had notice of its novation argument because Columbia Club's main argument on summary judgment was that the indemnity provision of the Agreement did not contain any provision for transfer or assignment. Moreover, Columbia Club argues that it was obvious from the arguments presented to the trial court that it did not agree to a transfer of indemnification. Columbia Club admits that it may have not used the specific term "novation" in the trial court, but nonetheless the Partnership had sufficient notice of the issue.

Our Trial Rules provide that no judgment rendered on a motion for summary judgment shall be reversed on the ground

that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. Ind. Trial Rule 56(H); *Hayden v. Linton–Stockton Classroom Teachers Ass'n,* 686 N.E.2d 143, 146 (Ind.Ct.App.1997). However, Trial Rule 15(B) provides in pertinent part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The Indiana Supreme Court explained that the policy behind Trial Rule 15(B) is "to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." *Ayr–Way Stores, Inc. v. Chitwood,* 261 Ind. 86, 300 N.E.2d 335, 338 (1973).

 We have held that fairness requires that the opposing party have "some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order." *Aldon Builders, Inc. v. Kurland,* 152 Ind. App. 570, 284 N.E.2d 826, 832 (1972). This is particularly true when the new issue is not unequivocally clear from the evidence presented at trial. *Id.* Notice must be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of the evidence. *K Mart Corp. v. Brzezinski,* 540 N.E.2d 1276, 1281 (Ind.Ct.App. 1989), *trans. denied.* Notice may be implied where the evidence presented at trial is such that a reasonably competent attorney would have recognized the unpleaded issue as being litigated. *Id.* Both parties must litigate the new issue, and implied consent to the trial of that issue will not be found unless the parties know or should have known that the unpleaded issue was being presented. *Elkhart County Farm Bureau Co-op. v. Hochstetler,* 418 N.E.2d 280, 283 (Ind.Ct.App.1981). In addition, implied consent to trial of an unpleaded defense may not be deduced merely because evidence relevant to a properly pleaded defense inferentially suggests a defense not within the pleadings. *Id.* at 284. Furthermore, the opposing party may not insert a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. *Hacker v. Review Bd.,* 149 Ind.App. 223, 271 N.E.2d 191, 195 (1971).

 A novation is a new contract made with the intent to extinguish one already in existence. *Rose Acre Farms, Inc. v. Cone,* 492 N.E.2d 61, 68 (Ind.Ct. App.1986), *trans. denied.* Where a novation is found, it acts to extinguish any claims which existed under the original contract. *Id.* at 69. Where a subsequent agreement lacks any language, either express or implied, which indicates an intention to create a novation, relieve contractual liabilities, substitute parties, or extinguish the old contract, we will not conclude that a party to the first contract has waived its right to sue for breach in the first contract. *White Truck Sales of Indianapolis, Inc. v. Shelby Nat'l Bank,* 420 N.E.2d 1266, 1271 (Ind.Ct.App.1981). A novation requires: (1) a valid existing contract; (2) the agreement of all parties to a new contract; (3) a valid new contract; and (4) an extinguishment of the old contract in favor of the new one. *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1233 (Ind.1994).

We believe that Columbia Club waived our review of its novation argument. In its complaint, Columbia Club failed to plead its novation argument. R. 2–4. Moreover, Columbia Club failed to raise its novation argument in its brief in support of its responses to the Partnership's motion for summary judgment. R. 289–97. Therefore, neither the Partnership nor the trial court had notice of the Columbia Club's novation argument until after the trial court rendered summary judgment in favor of the Partnership. Thus, we hold that Columbia Club's novation argument has been waived on appeal.

*Conclusion*

Based on the foregoing, we hold that the indemnification provision contained in the Agreement is a covenant which runs with the land, and thus, bound the subsequent grantees to the land and released the Partnership. Furthermore, we hold that the Columbia Club has waived its novation argument in the trial court. Accordingly, the trial court properly granted summary judgment for the Partnership.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.