# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**JEFFREY M. BELLAMY**
**STEPHEN R. DONHAM**
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**A. RICHARD M. BLAIKLOCK**
**RYAN J. VERSHAY**
Lewis Wagner, LLP
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

AVON TRAILS HOMEOWNERS )
ASSOCIATION, INC., )
　 )
Appellant, )
　 )
vs. ) No. 32A01-1307-PL-312
　 )
KELLIE HOMEIER, )
　 )
Appellee. )

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Jeffrey V. Boles, Judge
Cause No. 32C01-1206-PL-66

**December 16, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Avon Trails Homeowners Association, Inc. ("Avon Trails") appeals from the trial court's Order After Hearing denying its request for a preliminary injunction in favor of Kellie Homeier.[1]  Avon Trails raises one issue, which we revise and restate as whether the trial court erred in its interpretation of a restrictive covenant, thereby denying Avon Trails' request for a preliminary injunction.  We reverse.

FACTS AND PROCEDURAL HISTORY

Avon Trails is an association which manages a subdivision (the "Subdivision") located in Hendricks County, Indiana.  Avon Trails and the Subdivision are governed by the Declaration of Covenants, Conditions and Restrictions of Avon Trails (the "Declaration") recorded in the Hendricks County Recorder's Office on October 19, 1999.  The Declaration contains a prohibition against the outdoor storage of trailers within the Subdivision.  Specifically, Section 6.18 of the Declaration, located in Article VI which is titled "Use, Restrictions, and Architectural Control," states:

> *Section 6.18 Semi-tractor trucks, trailers, etc.*  No semi-tractor trucks, semi-trucks, semi-tractor trailers, boats, campers, mobile homes, disabled vehicles, and/or trailers shall be permitted to park on the Property or a Lot unless fully enclosed in a garage, or unless the same is necessary and incident to the Declarant's, builder's or Association's business on the Property.

Appellant's Appendix at 20, 22 (the "Covenant").  Also, the Declaration defines "Property" as all real estate contained within the Subdivision.  Further, Article II, Section

---

[1] Avon Trails also appeals orders entered by the court on May 3, 2013 and July 1, 2013, in which, as will be explained further below, the court effectively ruled that the Order After Hearing remained in effect and took no action.

Also, we note that the appellant's brief refers to Homeier in its caption as "Kellie Homeier n/k/a Kellie Homeier-Brock," and the brief, as well as certain trial court filings, similarly refer to her as Homeier-Brock.  However, the name of the appellee as it appears on our docket is Kellie Homeier, and accordingly we will refer to her simply as Homeier.

2.11 of the Declaration defines "Lot," in pertinent part as "any parcel . . . of land designated as such upon the Plat . . . or . . . that parcel of land upon which there is constructed a Dwelling Unit that is conveyed to an Owner . . . by the Declarant." Id. at 10. The Declaration defines "Declarant" as the Tri-North Development, LLC, an Indiana limited liability company and its successors and assigns. It defines "Builder" as "a person or entity engaged in and responsible for the original construction of a residence on a Lot" and defines "Association" as "Avon Trails Homeowners Association, Inc., a non-profit corporation, its successors and assigns." Id. at 9.

Homeier is the owner of a lot within the Subdivision located at 9271 Stonewall Lane (the "Lot"). Since Homeier became the Lot's owner, members of Avon Trails observed her parking a trailer (the "Trailer") within the Subdivision, and on October 27, 2011, Avon Trails, by its property manager, sent a letter to her informing her that parking the Trailer within Avon Trails violated the Declaration and requesting her compliance. On December 9, 2011, Avon Trails sent a second letter to Homeier again informing her that parking the Trailer within the Subdivision violated the Declaration and requested her compliance. However, the Trailer was observed parked at or adjacent to the Lot on December 20, 2011, December 28, 2011, January 3, 2012, January 11, 2012, and January 17, 2012, and Avon Trails photographed the trailer on each occasion.

On January 20, 2012, Avon Trails sent a third letter to Homeier informing her that parking the Trailer within the Subdivision violated the Declaration and again requested her compliance. The Trailer was subsequently observed by a member of Avon Trails parked at or adjacent to the Lot on January 26, 2012, and February 10, 2012, and

3

photographs were taken of the Trailer. On February 21, 2012, Avon Trails by counsel sent a fourth letter to Homeier informing her of the Covenant violation and once again requested her compliance by February 26, 2012. The letter also contained a photocopied image of the Covenant. Again, the Trailer was observed parked at or adjacent to the Lot on May 3rd, May 4th, and May 25th of 2012, and photographs were taken.

On June 13, 2012, Avon Trails filed its complaint along with a motion for preliminary injunction. The court held a hearing on the motion on June 26, 2012, in which Avon Trails appeared and Homeier failed to appear. The court reset the matter for a later hearing and requested Avon Trails to tender a proposed order subject to verification of service on Homeier. It was determined that service was not effectuated on Homeier at the time of the June 26, 2012 hearing, and accordingly Avon Trails filed a second motion for preliminary injunction, again seeking to enjoin Homeier from parking the Trailer within the Subdivision.

On November 1, 2012, the court held a hearing on Avon Trails' second motion in which Avon Trails appeared by counsel and by representative and Homeier appeared *pro se*. During the hearing, the court *sua sponte* raised the question of whether the Covenant applied to lot owners within the Subdivision such as Homeier. Following the hearing, the court took the matter under advisement and requested that Avon Trails respond to its questions regarding the interpretation of the Covenant. On November 6, 2012, Avon Trails filed its Memorandum in Response to the Court's Questions from November 1, 2012 Hearing, and on November 8, 2012, the court issued its Order After Hearing (the "Order") denying Avon Trails' preliminary injunction request.

4

On December 6, 2012, Avon Trails filed its notice of appeal under Cause Number 32A05-1212-PL-612 (the "First Appeal"). On April 30, 2013, the parties filed with the trial court their Joint Motion to Vacate Findings and Submission of Agreed Entry of Judgment (the "Joint Motion"), seeking to vacate the Order and for the imposition of a permanent injunction against Homeier. Specifically, the Joint Motion stated in part:

> After submission of [Avon Trails'] Brief in Support of its Appeal, the Parties, via counsel have discussed amicable resolution and final settlement of this matter in avoidance of further costs and uncertainty of continued litigation. The Parties Jointly Move and Agree as follows:
>
> a. That the Court's November 8, 2012 Findings of Fact be vacated and substituted with this Agreed Entry;
> b. That this Entry be accepted and enforceable by the Court as if it were its own Order;
> c. That [Homeier] agrees that the Declaration is valid and enforceable as it applies to her Lot, particularly Article 6, Section 18, the covenant against outdoor trailer storage;
> d. That [Homeier] agrees to a permanent injunction against violating Article 6, Section 18 so long as it is applicable to her as Lot Owner, Guest, Invitee, Tenant, etc. in the Avon Trails subdivision.
> e. That the Parties have jointly dismissed the pending appeal in this cause under Appellate Cause No. 32A05-1212-PL-00612, and;
> f. That [Avon Trails] will waive any claim it possesses to reimbursement of its court costs and legal fees pursuant to Article 10, Section 1 of the Declaration arising from this cause of action so long as the terms of this Agreement are faithfully kept.

Id. at 60.

On May 1, 2013, the trial court issued an order by entry on the chronological case summary ("CCS") stating:

> Court reviews the motion to vacate and reviews the order for after hearing entered 8 Nov., 2012 and notes that this case is on appeal with the court of appeal . . . giving the appellant opportunities to respond. The court declines the party's [sic] invitation to the trial court to vacate the judgment that the court entered on 8 Nov., 2012 because the court believe [sic] that the order

5

after hearing of 8 Nov., 2012 correctly sets out the status of this case at the time the case was tried to the court.

Id. at 4.

The parties then filed their Joint Motion with this court in the First Appeal on May 23, 2013, asking this court to accept their proposed agreed entry of judgment and to have the matter remanded to the trial court with instructions to vacate the Order and to accept the parties' proposed agreed entry as if it were the trial court's own entry. On June 11, 2013, this court issued its order stating in relevant part:

> 1.    Appellant and Appellee's Joint Motion . . . is GRANTED IN PART, and pursuant to Appellate Rule 37, this appeal is DISMISSED WITHOUT PREJUDICE and remanded to the trial court for further proceedings.
>
> 2.    On remand, if any part of the trial court's forthcoming ruling is adverse to Appellant, Appellant may, after filing a new notice of appeal, raise the issues it would have raised in this appeal along with any new issues created by the trial court's ruling on remand.

Id. at 70. On July 1, 2013, the trial court issued an order by entry on the CCS stating: "Court refers the parties to the Order of 3 May 2013 and takes no action on the motion. CAUSE DISPOSED bkm NOTICE."[2]   Id. at 5.   On July 17, 2013, Avon Trails commenced the instant appeal.

ISSUE / STANDARD OF REVIEW

The issue is whether the trial court erred in its interpretation of a restrictive covenant and in doing so denied Avon Trails' request for a preliminary injunction. The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that

---

[2] We note that the court's May 1, 2013 order was file stamped on May 1, 2013 and entered on the CCS on May 3, 2013.

6

discretion. <u>Gleeson v. Preferred Sourcing, LLC</u>, 883 N.E.2d 164, 171-172 (Ind. Ct. App. 2008) (citing <u>Ind. Family & Soc. Servs. Admin. v. Walgreen Co.</u>, 769 N.E.2d 158, 161 (Ind. 2002)). When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. <u>Id.</u> at 172. When findings and conclusions thereon are made, we must determine if the trial court's findings support the judgment. <u>Id.</u> We will reverse the trial court's judgment only when it is clearly erroneous. <u>Id.</u> Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. <u>Id.</u> A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. <u>Id.</u> We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. <u>Id.</u> Also, the power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. <u>Id.</u>

To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence the following: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. <u>Id.</u> If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion. <u>Id.</u>

DISCUSSION

We begin our discussion by noting the peculiar procedural posture of this case. As highlighted above, it appears that the parties have come to an agreement about disposing of this case as expressed in their Joint Motion, but the trial court on multiple occasions refused the parties' overtures to enter an order on the Joint Motion. Instead of accepting the proposed settlement expressed in the Joint Motion to vacate its order, enter a permanent injunction, and end any proceedings at the appellate court level, the court in its CCS entries on May 3 and July 1, 2013, opted to leave in place its interpretation of the Covenant as expressed in its Order.

We also note that on appeal Homeier does not challenge the arguments of Avon Trails; her brief consists of two pages in which she does not dispute Avon Trails' statement of the issue, agrees with Avon Trails' statement of the case and statement of facts, and her argument section simply states: "Because of a settlement, [Homeier] does not contest the arguments advanced by [Avon Trails]." Appellee's Brief at 1. We observe that Homeier's decision to not respond to Avon Trails' arguments in her brief is akin to failing to file a brief, and under such circumstances we may reverse based upon a *prima facie* error standard. See Nat'l Oil & Gas, Inc. v. Gingrich, 716 N.E.2d 491, 496 (Ind. Ct. App. 1999) (failure to respond to an issue raised by an appellant is akin to the failure to file a brief, and under such circumstances we may reverse the unaddressed issue on a showing of prima facie error). Under such circumstances, questions of law are still reviewed *de novo*. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

Nevertheless, the merits of this case do not prove difficult to address. This court has defined restrictive covenants in the following manner:

> Generally, a covenant is an agreement duly made to do, or not to do, a particular act. In modern usage, the term "covenant" generally describes promises relating to real property that are created in conveyances or other instruments. Covenants may be express or implied as a matter of law. Moreover, covenants are a species of express contract.
>
> * * * * * *
>
> If the required performance limits the uses that can be made by the owner or occupier of land, the covenant is usually called a restrictive covenant. We have held that restrictive covenants are, in essence, a form of express contract between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner.

Crawley v. Oak Bend Estates Homeowners Ass'n, Inc., 753 N.E.2d 740, 744 (Ind. Ct. App. 2001) (quoting Columbia Club, Inc. v. Am. Fletcher Realty Corp., 720 N.E.2d 411, 417-418 (Ind. Ct. App. 1999), trans. denied), reh'g denied, trans. denied. We also observed in Crawley regarding restrictive covenants that:

> The covenanting parties' intent must be determined from the specific language used and from the situation of the parties when the covenant was made. Furthermore, specific words and phrases cannot be read exclusive of other contractual provisions. In addition, the parties' intentions must be determined from the contract read in its entirety. We attempt to construe contractual provisions so as to harmonize the agreement.

Id. at 745 (quoting Columbia Club, 720 N.E.2d at 419). Finally, the Indiana Supreme Court has noted that "[r]estrictions found in a declaration . . . 'are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed.'" Villas West II of Willowridge Homeowners Ass'n, Inc. v. McGlothin, 885 N.E.2d 1274, 1279

9

(Ind. 2008) (quoting <u>Hidden Harbour Estates, Inc. v. Basso</u>, 393 So.2d 637, 639 (Fla. Dist. Ct. App. 1981)) <u>reh'g</u> <u>denied</u>, <u>cert.</u> <u>denied</u>, 555 U.S. 1213, 129 S. Ct. 1527 (2009).

The court in its Order found that the Covenant "is intended to apply to the declarants, builders or association's businesses on the property" and that Homeier "in this case does not fall within [the Covenant] that can be applied to her." Appellant's Appendix at 6. The crux of Avon Trails' argument is that this interpretation is clearly erroneous, specifically arguing that "[t]he Covenant is one sentence containing several conjunctions including 'and' and 'or;' however the pertinent conjunctions are the two instances of 'unless.' The Covenant absolutely disallows the parking of any trailer within the 'Property,'" which includes the lot owned by Homeier, and "two exceptions triggered by the respective uses of 'unless' only apply: 1. If the trailer is fully enclosed in a garage ('Garage Exception'); or 2. If the trailer's use is necessary and incident to the Declarant's, Builder's or Association's business ('Subdivision Development Exception')." Appellant's Brief at 12-13. We agree with this interpretation.

As noted, the Covenant appears in Article VI of the Declaration, titled "Use, Restrictions, and Architectural Control." Appellant's Appendix at 20. Article VI contains twenty-seven sections which restrict not only the Declarant, Builder, and Association, but also the lot owners. For instance, Section 6.3 is titled "Leasing" and states that "[a]ny Lot may be leased by its Owner." <u>Id.</u> at 21. Section 6.5, titled "Outside Storage," provides: "All clotheslines, equipment, garbage cans, service yards, woodpiles or storage piles shall be kept from view of neighboring homes and streets. All rubbish, trash or garbage shall be regularly removed from the premises, and shall not be allowed

10

to accumulate thereon. Trash must be stored in enclosed containers." Id. Again, the

Covenant states:

> *Section 6.18 Semi-tractor trucks, trailers, etc.* No semi-tractor trucks, semi-trucks, semi-tractor trailers, boats, campers, mobile homes, disabled vehicles, and/or trailers shall be permitted to park on the Property or a Lot *unless* fully enclosed in a garage, *or unless* the same is necessary and incident to the Declarant's, builder's or Association's business on the Property.

Id. at 22 (emphases added).

It is apparent that the Covenant is intended to apply not only to the Declarant, Builder, and Association, but also to others bound by the Declaration including Owners of a Lot such as Homeier. Many of the named items in the Covenant, including boats, campers, mobile homes, and disabled vehicles, appear to be primarily directed to Owners rather than the Declarant, Builder, and Avon Trails, for it is unlikely that one of those entities would place such an item on the Subdivision's premises. More importantly, however, Avon Trails' interpretation of the Covenant's construction is correct. The Covenant begins by succinctly stating that "No semi-tractor trucks, semi-trucks, semi-tractor trailers, boats, campers, mobile homes, disabled vehicles, and/or trailers shall be permitted to park on the Property or a Lot . . . ." Id. at 22. It then provides for two exceptions, identified by Avon Trails as the Garage Exception and the Subdivision Development Exception, each of which is preceded by the conjunction "unless." Id. Language contained following the word "unless" in the Subdivision Development Exception, including identifying the exception as applying to the Declarant, Builder, and Avon Trails, does not limit the main portion of the provision from applying to other parties bound by the Declaration including Owners. Indeed, such logic is circular in that

11

if this language was intended to limit the Covenant to those three entities, then the Covenant as a whole would have little meaning because it would apply only to the very same entities it exempts. This reasoning is also at odds with the Garage Exception, for not only is it unlikely that a semi-tractor truck or semi-tractor trailer would be fully enclosed in a garage located in the Subdivision, it is also unclear why those entities would be required to enclose such items in garages and where such garages would be located. The Covenant is applicable to Homeier, and the court's Order that it does not is clearly erroneous.

Having so determined, we would normally examine the elements of a preliminary injunction, determine whether Avon Trails was so entitled, and remand for further proceedings. However, the parties have agreed to a settlement, and indeed Homeier has relied on such agreement by opting to not challenge Avon Trails' arguments on appeal. Recognizing both this reliance by Homeier and our conclusion that the trial court's interpretation of the Covenant was clearly erroneous, and that, accordingly, it was error for the court to refuse to accept the parties' Joint Motion, we remand with instructions to the court to vacate its original order and enter an order substituting the applicable language of the Joint Motion, including that Homeier agrees that the Declaration is valid and enforceable as it applies to her, that she agrees to a permanent injunction against violating the Covenant so long as it is applicable to her, and that Avon Trails waives any claim it possesses to reimbursement of its court costs and legal fees pursuant to Article 10, Section 1 of the Declaration so long as the terms of the Joint Motion are faithfully adhered to by Homeier.

12

CONCLUSION

For the foregoing reasons, we reverse the court's Order After Hearing and remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBB, C.J., and BARNES, J., concur.