# FOR PUBLICATION



**FILED**
Jun 26 2014, 9:56 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSH F. BROWN**
Law Office of Josh F. Brown, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**STEVEN E. RIPSTRA**
Ripstra Law Office
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY WEISHEIT RENTAL PROPERTIES, LLC, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 19A05-1310-PL-488 |
| | ) | |
| DAVID GRACE, LLC AND DANCE CENTRAL ACADEMY, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-1301-PL-58

**June 26, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Terry Weisheit Rental Properties, LLC ("Weisheit") appeals the trial court's judgment finding the existence of a prescriptive easement permitting David Grace, LLC ("David Grace") and its tenant, Dance Central Academy, LLC ("Dance Central") (collectively, "Plaintiffs"), use of portions of land owned by Weisheit for ingress and egress from David Grace's property. David Grace and the Academy cross-appeal, contending that the easement should be expanded to include all parking areas owned by both David Grace and Weisheit, and should permit shared use by Weisheit and its tenants and David Grace and its tenants for ingress, egress, parking, and other activities.

Weisheit and Plaintiffs each raise issues on appeal. Weisheit contends that the trial court erred when it found the existence of a prescriptive easement. Plaintiffs argue in their cross-appeal that the trial court erred when it concluded a provision in Plaintiffs' deed was vague. We resolve this appeal with reference to the Plaintiffs' deed provision, but on a different basis than that suggested by the parties. Concluding that the trial court erred in construing the provision of the Plaintiffs' deed, we reverse.

**Facts and Procedural History**

At the time of the instant litigation, Weisheit was owned by Terry Weisheit ("Terry"). David Grace's managing member was Joe Randolph ("Joe"), and Dance Central's managing member was Carolyn Randolph ("Carolyn"), Joe's wife (collectively, "the Randolphs"). At the time of the instant litigation, Weisheit and David Grace owned subdivided portions of a

2

plot of land that was held by a common owner until 1981. Commercial buildings were on the land, including a building with a firewall that ran east-to-west.

In 1981, the northern portion of the land was sold to Lawrence and Norma Steffen (individually, "Lawrence" and "Norma;" collectively, "the Steffens") by Jerome Kerstein and a business he operated at the time (collectively, "Kerstein"). The property line between the two portions of the land followed the course of the firewall; plots 20 and 21a sat on the north side of the firewall, and plots 21b, 22, and 23 sat on the south side of the firewall. Each plot included paved parking and driving areas; plots 21a and 21b included driveway access to local roads.

The Steffens owned plots 20 and 21a, and operated a floor covering business in that space. Included in their deed was the following provision:

> ALSO, the mutual use and maintenance of a drive whose centerline is 82 feet South of the Northwest corner of said Lot #20, the mutual use and maintenance of the parking areas, and the equal sharing of expenses of maintaining the party wall comprising the southerly side of the structure located on above-described tract and the northerly side of the structure located on grantors' tract adjoining to the South of the above-described tract.

(Appellees' App'x at 14.)

In 1985, Terry Weisheit personally purchased plots 21b, 22, and 23, and in 2003 transferred ownership of these plots to the Weisheit business. Weisheit operated a construction business, and rented portions of plots 22 and 23 to other businesses, including another construction business and a business that provided window tinting for cars and trucks, including busses and other large commercial vehicles. Weisheit's deed did not

3

include any provisions similar to that in the Steffens' deed concerning mutual use and maintenance of the wall and common areas.

The Steffens' business received deliveries from large commercial trucks several times per week; these vehicles could not be backed into the Steffens' loading dock without crossing into plot 21b, owned by Weisheit. Weisheit and its tenants also received large delivery vehicles at times, which required use of plot 21a to access loading docks on the south side of the property. In addition, ordinary traffic required cars entering plot 21a from the local road to drive across plot 21b, and cars exiting plot 21b were required to drive across plot 21a to obtain access to the local road.

In 2012, after Lawrence died, Norma closed the flooring business and sold plots 20 and 21a on the northern side of the property to David Grace. David Grace's deed included a provision virtually identical to that in the Steffens' deed concerning maintenance and use of common areas and the firewall marking the property line between plots 21a and 21b:

> Also, the mutual use and maintenance of a drive whose centerline is 82 feet South of the Northwest corner of said Lot No. 20, the mutual use and maintenance of the parking areas, and the equal sharing of expenses of maintaining the party wall comprising the southerly side of the structure located on the above-described tract and the northerly side of the structure located on the tract adjoining to the South of the above-described tract.

(Appellees' App'x at 10.)

David Grace leased the property to Dance Central, which in August 2012 began to operate a business offering dance lessons to children ages three and up. Dance Central customers parked in spaces that belonged to Plaintiffs on plots 20 and 21a, but also parked in parts of the lots owned by Weisheit. Over the succeeding months, conflicts between

4

Weisheit on the one hand and Plaintiffs and Dance Central's customers on the other hand ensued.

On December 12, 2012, Weisheit parked a box truck just south of the property line between lots 21a and 21b. The truck did not cross over onto lot 21a, but caused difficulty for customers attempting to park in front of Dance Central. On January 8, 2013, David Grace and Dance Central, through counsel, sent a letter to Weisheit requesting that Weisheit cease blocking access to Dance Central's parking spaces. Weisheit did not comply.

On January 24, 2014, Plaintiffs filed a complaint to quiet title and determine the extent of a claimed easement. Also on January 24, 2013, Plaintiffs filed a motion for a temporary restraining order to prevent Weisheit from interfering with use of the land. On March 4, 2013, Weisheit filed its answer and counterclaim, in which he alleged that Plaintiffs' conduct amounted to a nuisance.

On March 6, 2013, after making an in camera inspection of the land, the court entered a temporary restraining order that required temporary barricades to be placed on Weisheit's side of the property, three feet south of the property line dividing plots 21a and 21b.

On June 11, 2013, a bench trial was conducted. On September 5, 2013, the trial court entered findings of fact and conclusions of law. The trial court expressly found that the provision in David Grace's deed did not create an express easement as to use of plots 21b, 22, and 23. However, the trial court found that a prescriptive easement existed as to all

5

parties for the mutual use of plots 21a and 21b.[1] Consequently, the court denied Weisheit's counterclaim for nuisance.

This appeal ensued.

**Discussion and Decision**

<u>Standard of Review</u>

Weisheit and Plaintiffs each appeal the trial court's entry of judgment in the form of findings of fact and conclusions of law. Our standard of review is governed by Indiana Trial Rule 52, and thus we reverse a judgment only where it is clearly erroneous. Ind. Trial Rule 52(A). We defer to the trial court's assessment of the credibility of witnesses. <u>Id.</u>

The precise nature of our review of such an order is determined by whether a party requested findings and conclusions in a written motion. While there is discussion in the transcript of a request for written findings and conclusions, our review of the record discloses no written motions.

Accordingly, we review the judgment as though findings and conclusions were entered <u>sua sponte</u>. <u>See</u> T.R. 52(D). We use a two-tiered standard of review, looking first to see whether the evidence supports the findings. <u>Downing v. Owens</u>, 809 N.E.2d 444, 449 (Ind. Ct. App. 2004), <u>trans. denied</u>. We construe the findings liberally in support of the judgment; we do not reweigh evidence or reassess credibility, and we consider only the

---

[1] We note that, among the various arguments presented to the trial court, Plaintiffs presented evidence that the Jasper Building/Planning Department opined in a June 6, 2012 letter that the Plaintiffs' use of the premises as a dance studio conformed to zoning requirements; Weisheit disputed this. (Ex. P.) We note this to express the concern, reflected at trial by Weisheit, that the Building Commissioner for the City of Jasper was married to one of Plaintiffs' attorneys at trial, and that the couple's child attended dance classes at Dance Academy. Because this zoning issue plays no further role in our decision, however, we make no further comment on the matter.

evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id. We reverse only when a review of the record leaves us firmly convinced that a mistake has been made. Id. In reviewing whether the findings support the judgment, we reverse the trial court's order as clearly erroneous only when the findings and conclusions do not support the judgment. Id. Further, we review questions of law de novo, and afford no deference to the trial court in this regard. In re Estate of Owen, 855 N.E.2d 603, 608 (Ind. Ct. App. 2006).

Plaintiffs' cross-appeal raises for our review a question of construction of a deed provision. As our supreme court has stated,

> in construing a deed, a court should regard the deed in its entirety, considering the parts of the deed together so that no part is rejected. Where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. Courts consider the known use to which the property was to be subjected and therefrom give the conveyance the effect intended by the parties.

Tazian v. Cline, 686 N.E.2d 95, 97-98 (Ind. 1997) (citations, quotations, and typographic marks omitted).

## Analysis

Weisheit argues that the trial court erred when it found the existence of a prescriptive easement favoring Plaintiffs' use of plot 21b, and contends that, even if an easement were properly found, the trial court's order erroneously extends the scope of the easement by implication. Plaintiffs have presented an issue on cross-appeal, namely, whether the trial court erred when it did not find the existence of an easement—express or prescriptive—that would permit Dance Academy and its customers to use the driving areas and parking spaces in plots 21b, 22, and 23, and Weisheit and its tenants to use the driving areas and parking

7

spaces in plots 20 and 21a. While we agree with Plaintiffs that the trial court erred in construing the deed provision, we find a different error than that which the Plaintiffs advance.

We turn first to the disputed provision in the deed Norma conveyed to David Grace:

> Also, the mutual use and maintenance of a drive whose centerline is 82 feet South of the Northwest corner of said Lot No. 20, the mutual use and maintenance of the parking areas, and the equal sharing of expenses of maintaining the party wall comprising the southerly side of the structure located on the above-described tract and the northerly side of the structure located on the tract adjoining to the South of the above-described tract.

(Appellees' App'x at 10.) This is substantially similar to the provision in the deed Kerstein conveyed to the Steffens in 1981, which reads:

> ALSO, the mutual use and maintenance of a drive whose centerline is 82 feet South of the Northwest corner of said Lot #20, the mutual use and maintenance of the parking areas, and the equal sharing of expenses of maintaining the party wall comprising the southerly side of the structure located on above-described tract and the northerly side of the structure located on grantors' tract adjoining to the South of the above-described tract.

(Appellees' App'x at 14.)

In its opinion, the trial court found that this was an express easement, but concluded that the easement was void for vagueness.

An easement is the right to use the land of another. Borovilos Rest. Corp. II v. Lutheran Univ. Ass'n, Inc., 920 N.E.2d 759, 764 (Ind. Ct. App. 2010).

> It is well established that easements are limited to the purpose for which they are granted. The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. The owner of the property over which the easement passes, known as the servient estate,

8

may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. The servient owner may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. Moreover, [the] owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement.

Kwolek v. Swickard, 944 N.E.2d 564, 571 (Ind. Ct. App. 2011), trans. denied.

Here, the 1981 deed provision establishes mutual benefits for Kerstein, the original grantor, and the Steffens, namely, the use of the driving and parking areas that were divided in the 1981 conveyance of part of the land to the Steffens. It also includes language establishing mutual obligations for maintenance of those commonly-used parts of the parking and driving areas and the party wall. None of this, we think, is vague. But neither is it an easement, for it lacks any clearly designated dominant or servient estate. See Oakes v. Hattabaugh, 631 N.E.2d 949, 952 (Ind. Ct. App. 1994) (noting that a valid easement must establish "with reasonable certainty the easement created and the dominant and servient estates"), trans. denied.

That is not the end of the matter, however. We must construe the nature of the deed provisions in order to ensure that full effect is given to the language of the conveyance. Tazian, 686 N.E.2d at 97. The deed provisions in question here establish a set of reciprocal duties and rights as to the driving and parking areas of plots 20, 21a, 21b, and 22—that is, the entirety of the driving and parking surface—and for maintenance of the party wall that divides the structures on plots 21a and 21b.

9

"Generally, a covenant is an agreement duly made to do, or not to do, a particular act." Columbia Club, Inc. v. Am. Fletcher Realty Corp., 720 N.E.2d 411, 417 (Ind. Ct. App. 1999). "In modern usage, the term 'covenant' generally describes promises relating to real property that are created in conveyances or other instruments." Id. Covenants are "a species of express contract," and may be express or implied as a matter of law. Id. In Columbia Club, a contract filed with the Marion County Recorder established "cross-easements to facilitate construction" of buildings that would adjoin the Columbia Club building in downtown Indianapolis, and included indemnity provisions. Id. at 416. That is, the cross-easements were a covenant. Id. at 417.

Here, as in Columbia Club, the deed provisions establish mutual obligations between the original grantor and grantee for use and maintenance of plots 20, 21a, 21b, and 22. That is, the deed provisions are covenants.

Covenants may be negative, affirmative, or restrictive. Id. at 418. A negative covenant is one that requires a covenantor to refrain from taking an action. Id. A restrictive covenant is "a form of express contract between a grantor and a grantee in which the latter agrees to refrain from using his property in a particular manner." Id. An affirmative covenant requires a covenantor to do something—pay money, provide goods or services, or take some other action—"either on or off the land owned by the covenantor." Id. Thus, affirmative covenants are express contracts between grantors and grantees, where an affirmative burden is placed upon the grantee. Id.

10

Here, again as in Columbia Club, the deed provisions establish duties on the part of both the grantor and the grantee to share the costs of maintenance for the parking and driving areas and the party wall. Thus, the deed provisions establish an affirmative covenant.

Land use covenants may be either personal, in which case they may be enforced only by the original parties to an agreement, or they may "run with the land" and be enforceable by "remote grantees," that is, subsequent parties who acquire interests in the land. Id. To determine whether the deed covenants in this case run with the land—and thus, whether Plaintiffs and Weisheit alike may benefit from and are burdened by the deed provisions—we make two inquiries. We first ask whether the covenant is one which may run with the land under any circumstances. Id. (citing Conduitt v. Ross, 102 Ind. 166, 26 N.E. 198 (1885)). We next look to whether the parties' intention, as expressed in the agreement containing the covenant, was that the covenant would run with the land. Id. A covenant that imposes an affirmative burden runs with the land if: "(1) the covenantor and covenantee intend it to run; (2) the covenant touches and concerns the land; and (3) there is privity of estate between subsequent grantees of the original covenantor and covenantee." Id.

> Concerning the question of the intent of the parties, this Court has observed:
>
> The first element, the parties' intent that their covenant should run with the land, must be determined from the specific language used and from the situation of the parties when the covenant was made. Although a statement in the covenant that it is binding on the covenantor's heirs and assigns is strong evidence of intent that the covenant should run with the land, the omission of such language here, as the defendants concede, does not conclusively prove the covenant was not intended to run.

Moseley v. Bishop, 470 N.E.2d 773, 776-77 (Ind. Ct. App. 1984) (citations omitted).

11

Here, as in Moseley, the deeds do not include an express statement of intent by the parties. But that intent may be readily inferred from circumstances at the time that Kerstein conveyed the property to the Steffens. Kerstein conveyed to the Steffens plots 20 and 21a, which included common driving and parking areas and a party wall. Plots 21a and 21b, which Kerstein retained until 1985, had as their dividing line the party wall, which left the driveway and driving and parking areas unevenly divided.

Yet Kerstein and the Steffens both had loading docks facing the common driving and parking area, and routinely received deliveries from semis and large trucks. For semis to back into the loading dock on one party's side of the building, it was necessary for trucks to traverse over the other party's portion of the driving and parking area. These conditions continued after plots 21b and 22, which Kerstein had retained, were conveyed to Weisheit. Moreover, the covenant was placed into the deed from Kerstein to the Steffens. That is, rather than existing in a separate document, the covenant was part of Kerstein's conveyance of part of the property to the Steffens, and was recorded when the deed was filed with the DuBois County Recorder.

The same facts serve to establish that the covenant touches and concerns the land. This requirement "ensures that one purchasing land will be bound by his grantor's contract only where the contract has some logical connection to his use and enjoyment of the land." Id. at 777. "[A] successor to the covenantor's interest in the property may be bound by the covenant if it is logically connected to that property interest." Id. Here, the covenant has as its subject-matter specific provisions concerning use and maintenance of the land and a

12

building appurtenant to it, and provides for mutual benefits and burdens. It thus touches and concerns the land.

Turning to the last element, the parties agreed to the admissibility at trial of exhibits establishing that both David Grace and Weisheit were in vertical privity with one another from a common source—Kerstein—and there is no dispute on the question of privity. The Steffens and Kerstein entered into a real covenant when Kerstein conveyed part of the land to the Steffens; that covenant was binding upon successors in interest. The deed from Norma to David Grace includes a provision nearly identical to that in the deed from Kerstein to the Steffens; that is, rights and duties that would have inured to David Grace in any event by a real covenant were also expressly conveyed in the deed.

We accordingly conclude that the trial court erred as a matter of law in interpreting the deed provisions and finding them to be vague. As a result, we reverse the judgment of the trial court.

Reversed.

KIRSCH, J., and MAY, J., concur.

13